IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AIR TIGER EXPRESS (USA), INC., | : | |
| | : | |
| Plaintiff, | : | CASE NO. _____ |
| | : | |
| v. | : | Hon. _____ |
| | : | |
| PAUL BARCLAY; and THE ORIGINAL | : | FILED: APRIL 4 , 2008 |
| AUSTRALIAN, LLC, | : | 08CV1945        TC |
| | : | JUDGE DARRAH |
| Defendants. | : | MAGISTRATE JUDGE ASHMAN |

**DEFENDANTS' NOTICE OF REMOVAL FROM STATE COURT**

Defendants, Paul Barclay ("Barclay") and The Original Australian, LLC dba Warmbat

Australia ("Warmbat"),  for the purpose of removing this case pursuant to 28 U.S.C. § 1441(a),

submit this Notice of Removal pursuant to 28 U.S.C. §1446.   The grounds for removal are stated

below.  A copy of all process, pleadings and other papers filed in the Circuit Court of Cook

County and received by the Defendants is submitted as Exhibit 1.

1.     **State Court Action**.  On March 4, 2008, Plaintiff, Air Tiger Express (USA), Inc.

("Air Tiger") filed suit in the Circuit Court of Cook County, Illinois entitled *Air Tiger Express*

*(USA), Inc. v. Barclay, et al.*, Case No. 2008L002416.  On March 5, 2008, Air Tiger mailed, e-

mailed and faxed the Summons and Complaint to counsel for Defendants.  On March 27, 2008,

Defendants executed a waiver of service.

2.     **Removal is timely**.  This removal is being filed within 30 days of when

Defendants waived formal service of the state court Summons and Complaint (and within 30

days of when the Summons and Complaint were delivered to Defendants' counsel with the request for waiver of service).

3.    **Federal Court Jurisdiction**.  This Court has original diversity jurisdiction under 28 U.S.C. § 1332.

a.    <u>There is complete diversity of citizenship</u>.  Plaintiff Air Tiger is a corporation organized under the laws of the state of Delaware with its principal place of business in Springfield Gardens, New York.  Defendant Barclay is a citizen of Ohio.  Defendant Warmbat is a Ohio limited liability company, the members of which are citizens of Maine, Ohio, and Kentucky, as follows:

- Rich and Linda Berthy (Maine)

- Pat and Ruth Bendel (Ohio)

- Kevin F. Sunshein (Ohio)

- Robin Laughlin (Ohio)

- Joe Lukens (Ohio)

- Paul Barclay (Ohio)

- Thomas M. Ruff (Ohio)

- John Neace (Kentucky)

b.    <u>The jurisdictional minimum amount in controversy is satisfied</u>.  The Complaint prays for damages in excess of $110,451.80 (see Ex. 1).

4.    **State Court Documents Attached**.  A copy of all process, pleadings, and orders served upon Barclay and Warmbat in the Circuit Court of Cook County, Illinois, Case No. 2008L002416 are attached as Exhibit 1.

5. **Notice to Plaintiff in State Court**.  Contemporaneously with the filing of this Notice of Removal in this Court, Defendants have given written notice hereof to Air Tiger by service to its counsel of this Notice and has filed with and served the Clerk of the Circuit Court of Cook County, Illinois notice of the removal.

6. **Relief Requested**.  Defendants respectfully give notice that this action is to be removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,


  /s/ Marion B. Adler
Marion B. Adler
Rachlis Durham Duff & Adler, LLC
542 South Dearborn, Suite 900
Chicago, IL 60605
Telephone:  (312) 733-3957
Facsimile:  (312) 733-3952
E-mail:  madler@rddlaw.net

Attorneys for Defendants
Paul Barclay and The Original Australian, LLC

OF COUNSEL:

Chad D. Cooper, Esq.
Christine M. McLaughlin, Esq.
Thompson Hine LLP
2000 Courthouse Plaza, N.E.
P.O. Box 8801
Dayton, Ohio  45401-8801
Telephone:  (937) 443-6909
Facsimile:  (937) 443-6830

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AIR TIGER EXPRESS (USA), INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PAUL BARCLAY and | ) |
| THE ORIGINAL AUSTRALIAN, LLC, | ) |
| | ) |
| Defendants. | ) |

FILED: APRIL 4 , 2008
No.   08CV1945          TC
JUDGE DARRAH
Honorable MAGISTRATE JUDGE ASHMAN

**NOTICE OF FILING AND
CERTIFICATE OF SERVICE**

To:   Steven K. Sims
      David Seidman
      Enterprise Law Group, LLP
      70 W. Madison Street
      Suite 740
      Chicago, Illinois 60602

Please take notice that on Friday, April 4, 2008 we filed the following documents with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois: (a) Defendants' Notice of Removal from State Court; and (b) Rule 7.1 Disclosure of Corporate Affiliations by Defendant The Original Australian, LLC.

A copy of this notice and the aforementioned documents was served upon counsel for the plaintiff, as listed above, by U.S. mail, postage prepaid on Friday, April 4, 2008.

  /s/ Marion B. Adler
Marion B. Adler
Rachlis Durham Duff & Adler, LLC
542 South Dearborn, Suite 900
Chicago, IL 60605
Telephone: (312) 733-3957

Attorneys for Defendants

```
08CV1945          TC
JUDGE DARRAH
MAGISTRATE JUDGE ASHMAN
```

# EXHIBIT 1

Civil Action Cover Sheet - Case Initiation

(Rev. 2/8/06) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

AIR TIGER EXPRESS (USA), INC.,

v.

PAUL BARCLAY; and THE ORIGINAL AUSTRALIAN, LLC

}

No.

2008L002416
CALENDAR/ROOM W
TIME 00:00
Breach of Contract

(FILE STAMP)

## CIVIL ACTION COVER SHEET - CASE INITITATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. ONLY ONE (1) CASE TYPE MAY BE CHECKED WITH THIS COVER SHEET.

Jury Demand ☐ Yes ☑ No

## PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

## TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confession of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

## COMMERCIAL LITIGATION
CASE TYPES:
- ☑ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please Specify Below**)
- ☐ 075 Other Commercial Litigation
  (Please Specify Below**)
- ☐ 076 Retaliatory Discharge

## OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____

By: _____
(Attorney)                          (Pro Se)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 ( )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____LAW_____ DIVISION

(Name all parties)

AIR TIGER EXPRESS (USA), INC.,

v.

PAUL BARCLAY; and THE ORIGINAL AUSTRALIAN, LLC

}

2008L002416
CALENDAR/ROOM W
TIME 00:00
Breach of Contract

No. _____

## SUMMONS

To each Defendant:    The Original Australian, LLC - Registered Agent
Richard Berthy, 6180 Southampton, Centerville, OH 45439

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

MAR 2008

Atty. No.: 40994

Name: David Seidman

Atty. for: Plaintiff

Address: 70 West Madison, Suite 740

City/State/Zip: Chicago IL 60602

Telephone: 312-578-0200

Service by Facsimile Transmission will be accepted at: _____

WITNESS,_____, ____

_____
**Clerk of Court**

Date of service: _____, ____
(To be inserted by officer on copy left with defendant or other person)

(Area Code) (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2120 - Served　　　　　　　　2121 - Served
2220 - Not Served　　　　　　2221 - Not Served
2320 - Served By Mail　　　　 2321 - Served By Mail
2420 - Served By Publication　 2421 - Served By Publication
SUMMONS　　　　　　　ALIAS - SUMMONS　　　CCG N001-10M-1-07-05 ( . 　　　　　　　　)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____LAW_____ DIVISION

(Name all parties)

AIR TIGER EXPRESS (USA), INC.,

}

v.

PAUL BARCLAY; and THE ORIGINAL AUSTRALIAN,
LLC

No. _____

### SUMMONS

**To each Defendant:**　Paul Barclay: The Original Australian, LLC
7464 Webster Street, Dayton Ohio 45414

　　　**YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ **Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602**

❑ **District 2 - Skokie**　　　　　❑ **District 3 - Rolling Meadows**　　❑ **District 4 - Maywood**
　5600 Old Orchard Rd.　　　　　2121 Euclid　　　　　　　　　　1500 Maybrook Ave.
　Skokie, IL  60077　　　　　　　Rolling Meadows, IL  60008　　　Maywood, IL  60153

❑ **District 5 - Bridgeview**　　　❑ **District 6 - Markham**　　　　　❑ **Child Support**
　10220 S. 76th Ave.　　　　　　16501 S. Kedzie Pkwy.　　　　　28 North Clark St., Room 200
　Bridgeview, IL  60455　　　　　Markham, IL  60426　　　　　　　Chicago, Illinois  60602

**You must file within 30 days after service of this Summons, not counting the day of service.**
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

　　　This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this Summons shall be returned so endorsed.  This Summons may not be served later than 30 days after its date.

2008

Atty. No.: 40994

Name: David Seidman

Atty. for: Plaintiff

Address: 70 West Madison, Suite 740

City/State/Zip: Chicago IL 60602

Telephone: 312-578-0200

Service by Facsimile Transmission will be accepted at: _____

WITNESS,_____, _____

_____
**Clerk of Court**

Date of service: _____, _____
**(To be inserted by officer on copy left with defendant or other person)**

_____
**(Area Code)　(Facsimile Telephone Number)**

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Notice and Acknowledgment of Receipt of Summons and Complaint                    (3/01/07) CCG 0063

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Air Tiger Express (USA), Inc.
                                            **Plaintiff(s)**

v.

Paul Barclay and The Original Australian, LLC
                                            **Defendant(s)**

Case No. 08 L 2416

**Defendant(s) Amount Claimed: $** $110451.80 +

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

**To:** Chad Cooper                          **Address:** Thompson Hine LLP, 2000 Courthouse Plaza, N.E.
            (Name)

**City:** Dayton                          **State:** Ohio                          **Zip:** 45402

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 30      *days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within 30      *days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 60      **days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on March 5                          , 2008      .

**Dated:** March 5                          , 2008      _____
                                                                        Signature

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above captioned matter at:

(Please print or type)

**Name:** _____

**Address:** _____    **City/State/Zip:** _____

**Relationship to Entity /Authority to Receive Service of Process:** _____
(Not applicable if your are the named Defendant or Respondent.)

**Dated:** _____, _____    _____
                                                                        Signature

*(To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date on which the request is sent, or 60 days if the defendant is addressed outside the United States.

**(To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the date on which the request is sent, or 90 days if the defendant is addressed outside the United States.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

AIR TIGER EXPRESS (USA), INC.,       )
a corporation of Delaware            )
                                     )
            Plaintiff,               )
                                     )
        v.                           )
                                     )
PAUL BARCLAY; and THE ORIGINAL       )
AUSTRALIAN, LLC, an Ohio limited     )
liability company;                   )
                                     )
            Defendants.              )

2008L002416
CALENDAR/ROOM W
TIME 00:00
Breach of Contract

Amount Sought: $110,451.80 plus
other damages, fees, etc.

## COMPLAINT

Plaintiff Air Tiger Express (USA), Inc. ("ATE") for its complaint against Paul Barclay ("Barclay") and The Original Australian, LLC ("The Original Australian") (collectively "Defendants") states as follows:

### INTRODUCTION

This case arises from ATE's performance of freight forwarding services and customs brokerage services for The Original Australian. After ATE contracted for all of The Original Australian's transportation needs, ATE requested payment of $110,451.80 for the unpaid services. In response, The Original Australian—through its Founder and CEO Barclay—agreed to pay the requested amount and <u>even faxed a copy of a completed check that it claimed it would be sending to ATE.</u> The promise to pay was made on November 2, 2007 but ATE still has not received any money from The Original Australian despite repeated attempts to resolve this issue amicably. Therefore, ATE has no other recourse than to file suit in this case against Defendants.

## PARTIES

1. ATE is a Delaware corporation with an office in Elk Grove Village, Illinois. The Original Australian, LLC contracted for freight forwarding and other services with ATE's Elk Grove Village office on multiple occasions, including the unpaid services at issue in this case.

2. The Original Australian is an Ohio limited liability company that does business as "Warmbat." The Original Australian sells its footwear to retailers across the United States including Illinois.

3. Barclay is the Founder and Chief Executive Officer of The Original Australian. Upon information and belief, Barclay is a citizen of Ohio. Upon information and belief, Barclay is either a member of The Original Australian or owns an entity that is a member of The Original Australian.

### JURISDICTION AND VENUE

4. The Court has personal jurisdiction over The Original Australian pursuant to 735 ILCS 5/2-209. The Court has personal jurisdiction over Barclay pursuant to 735 ILCS 5/2-209.

5. The Court has jurisdiction over The Original Australian because it transacts business in Illinois, committed a fraud in Illinois, and/or made a contract or promise that is substantially connected with Illinois.

6. The Court has jurisdiction over Barclay because he committed a fraud in Illinois, and/or made a contract or promise that is substantially connected with Illinois.

7. The Court has venue over this case pursuant to 735 ILCS 5/2-101. Defendants are not residents of Illinois. The underlying transaction or some part thereof occurred in Cook County, Illinois.

## ATE AND THE ORIGINAL AUSTRALIAN ENTER INTO A FREIGHT FORWARDING AGREEMENT

8. On September 24, 2007 Barclay e-mailed ATE to request freight forwarding quotes for three shipments, including an oceanborne shipment scheduled to depart from Shanghai on October 5, 2007.

9. After other e-mails between Barclay and ATE, on September 25, 2007 Joe Davis, an ATE employee, e-mailed a proposal to Barclay. This proposal contained various pieces of information including ATE's rates and policies for carriage of goods by sea, ocean forwarding fees, customs brokerage fees, and explanations of its services. (Exhibit 1)

10. In the "CUSTOMS BROKERAGE" section of the proposal, it states:

- All payments of Duty, Transportation, Delivery, and Handling are due within 10 days of the issuance of the A.T.E. Invoice.
- Disbursement Fee of 1.5% of the amount outlayed by A.T.E. for all invoices not paid within 10 days of the issuance of invoice.
- After increments of 30 days, an additional 1.0% of the amount outlayed by A.T.E. will be assessed.
- Any invoices in excess of US $10,000 must be paid upfront, before cargo is released.

11. The proposal also noted that transit time would be "12-14 Days (Port to Port)." (Exhibit 1) Later on September 25, 2007, Barclay agreed to the terms of the proposal, e-mailing "Please proceed with this 1st shipment via sea container." (Exhibit 2, at 2)

## THE GOODS ARE SUCCESSFULLY SHIPPED FROM CHINA TO THE ORIGINAL AUSTRALIAN IN OHIO

12. The container ship carrying The Original Australian's goods was scheduled to carry the goods from China to the Port of Long Beach from October 12-23, 2007 or eleven days. The goods actually arrived at the Port of Long Beach on October 24, 2007—12 days after they left China.

13. The parties also entered into a bill of lading for the oceanborne leg of shipment, customs charges, and other expenses. The bill of lading states:

> (16) FREIGHT AND CHARGES
>
> 16.2   Freight shall be deemed earned on receipt of goods by Carrier, whether the freight be intended to be prepaid or collected at destination. Payment shall be in full and in cash, in the currency named in this Bill of Lading, or another currency at Carrier's option. Interest at 12% shall run from the date when freight and charges are due….In any referral for collection or action against Merchant for monies due to Carrier, upon recovery by Carrier, Merchant shall pay the expenses of collection and litigation, including reasonable attorneys' fees.

(Exhibit 3)  Section 16.2 has been publicly available in ATE's tariff, an electronic copy of which has been available for public review at all relevant times in this case at the U.S. Traffic Service at www.ustraf.com. (Also printed as part of Exhibit 3)

14. After the goods arrived and were discharged at the Port of Long Beach, they were presented to U.S. Customs on October 25, 2007. U.S. Customs did not clear the goods until October 29, 2007.

15. Before, during, and after the oceanborne leg of this shipment, ATE and The Original Australian discussed ATE lining up trucks to carry the goods from the Port of Long Beach, California to The Original Australian's office in Dayton,

Ohio. The Original Australian agreed to ATE's additional service offer. ATE

obtained the requisite trucking services for the Original Australian.

16. The parties agreed that the trucking portion of the shipment should take 2-3

business days. Five of the seven containers carrying the goods were transported

by truck from California during the 2-3 business day time period and arrived on

either November 2 or November 5. The other two containers arrived shortly

thereafter. One truckload was delivered on November 6 because The Original

Australian could not handle its delivery on November 5—a situation unrelated to

ATE's freight forwarding services. The other truckload arrived on November 8,

which The Original Australian knew was first being loaded in California on

November 5, 2007 and to which The Original Australian did not raise any

objection before its arrival on November 8.

17. Upon information and belief, The Original Australian has not returned any of the

goods.

18. The Original Australian did not complain about any aspect of ATE's services

while the goods were in transit from China to Ohio.

**THE ORIGINAL AUSTRALIAN AGREES TO PAY ATE FOR $110,451.80 IN
OUTSTANDING CHARGES WITHOUT ANY INTENTION TO PAY—
*IT EVEN FAXES A FALSE CHECK TO ATE***

19. ATE provided the services pursuant to the contract between itself and The

Original Australian.

20. On October 23, 2007 ATE issued Invoice #7105300 to The Original Australian

for the oceanborne leg of the carriage in the amount of $15,300. (Exhibit 4)

Although ATE's credit terms state otherwise as set forth in the CUSTOMS

BROKERAGE language recited earlier in this complaint, ATE agreed to release

The Original Australian's freight in California in exchange for a copy of a check

the day the freight arrives and the actual check five days later. The Original

Australian sent a check to ATE for the full amount of Invoice #7105300 dated

October 29, 2007.

21. On November 2, 2007, ATE issued Invoice #7115026 to The Original Australian

for a variety of other freight forwarding services in the amount of $110,451.80.

(Exhibit 5)  The breakdown of this amount is as follows:

| | |
|---|---|
| Duty: | $65,921.80 |
| Brokerage: | $100.00 |
| Bond Premium: | $3,560.00 |
| Inland Freight: | $34,300.00 |
| Outport Services: | $35.00 |
| Storage: | $200.00 |
| Pallets: | $2,100.00 |
| Drayage: | $1,575.00 |
| Devan/Transload: | $2,660.00 |

22. ATE informed The Original Australian that ATE would not release the freight

unless Invoice #7115026 was paid.  The Original Australian and Barclay were

aware that payment must be made before ATE would release the cargo.

Following the process that worked previously, ATE agreed to release The

Original Australian's freight in California in exchange for a copy of a check on

November 2, 2007 with the check to be mailed out shortly thereafter.

23. Barclay instructed one of The Original Australian's employees, Mary Banks, to

"cut this check today and fax to Kim." (Exhibit 6)  On November 2, 2007 Ms.

Banks sent Kim at ATE a fax copy of a check for $110,451.80.  (Exhibit 7) ATE

expected to receive the original check within five days of its mailing.  However,

The Original Australian has sent neither the original of the faxed check nor any other form of payment to ATE for invoice #7115026.

24. Barclay was aware that ATE would not have released the cargo had The Original Australian not agreed to pay Invoice #7115026 and faxed a copy of the check purportedly intended to pay it.  In other words, ATE detrimentally relied on Barclay's promise to pay.

25. Barclay agreed to make this payment while all or substantially all of the goods were still in transit to The Original Australian.  When Barclay agreed to make this payment, neither he nor anyone else at The Original Australian had uttered a single complaint about the timeliness of ATE's performance.

## THE ORIGINAL AUSTRALIAN UNSUCCESSFULLY COVERS UP ITS DECEIT

26. When the original check never arrived, ATE took steps to secure payment.  ATE also took steps to protect The Original Australian from possible fraud by third parties.

27. ATE advised The Original Australian to stop payment on the check that never arrived.  The Original Australian never responded that the original check was never sent.  Instead, The Original Australian insisted that the original check was sent to ATE.

28. ATE then requested that The Original Australian wire transfer the $110,451.80 due pursuant to Invoice #7115026 because ATE never received the original check.  The Original Australian never made any wire transfer to ATE to pay Invoice #7115026.

## COUNT I – BREACH OF CONTRACT (The Original Australian)

29. ATE adopts and incorporates paragraphs 1 to 28 as paragraph 28 of Count I.

30. ATE and The Original Australian duly executed a contract for freight forwarding services. ATE provided the freight forwarding services pursuant to the parties' contract. The Original Australian agreed it would pay ATE for providing freight forwarding services.

31. Pursuant to the parties' contract, The Original Australian agreed it would pay a Disbursement Fee of 1.5% of the amount outlayed by ATE for all invoices not paid within 10 days of the issuance of invoice. The Original Australian has failed to pay Invoice #7115026 for $110,451.80 within ten days of its issuance on November 2, 2007. Therefore, The Original Australian owes $1,656.78 as a Disbursement Fee.

32. Pursuant to the parties' contract, The Original Australian agreed it would pay "[A]fter increments of 30 days, an additional 1.0% of the amount outlayed by A.T.E." As of February 29, 2008, three thirty day periods have passed. Each of these periods has generated an additional fee of $1,104.52 for a total of $3,313.56.

33. Pursuant to the bill of lading, "In any referral for collection or action against Merchant for monies due to Carrier, upon recovery by Carrier, Merchant shall pay the expenses of collection and litigation, including reasonable attorneys' fees." Thus, The Original Australian owes ATE for its expenses of collection and litigation in filing and prosecuting this matter.

WHEREFORE, Plaintiff Air Tiger Express (USA), Inc., requests judgment in its favor and against Defendant The Original Australian, LLC for actual damages in

excess of $50,000, attorneys fees, prejudgment interest, costs, and such other relief as the Court deems just and proper.

### COUNT II – ACCOUNT STATED (The Original Australian)

34. Plaintiffs adopt and incorporate paragraphs 1 to 28 as paragraph 33 of Count II.

35. ATE entered into a freight forwarding agreement with The Original Australian in September, 2007. This agreement is of a monetary character.

36. On November 2, 2007, ATE provided The Original Australian Invoice #7115026 totaling the unpaid charges owed by The Original Australian as $110,451.80. (Exhibit 5). On the same day, The Original Australian acquiesced and agreed to pay $110,451.80 to ATE. (Exhibit 6)

37. When it agreed to pay the $110,451.80, The Original Australian did not object to any of the items on the invoice provided by ATE. When it agreed to pay the $110,451.80, The Original Australian did not object to quality of the services listed on the invoice provided by ATE.

38. The Original Australian promised to pay $110,451.80 pursuant to the invoice. In fact, The Original Australian faxed a copy of a completed check to ATE for $110,451.80. (Exhibit 7) Neither this check nor any other check or form of payment was sent to ATE for payment of the $110,451.80 invoice.

WHEREFORE, Plaintiff Air Tiger Express (USA), Inc., requests judgment in its favor and against Defendant The Original Australian, LLC for actual damages in excess of $50,000, attorneys fees, prejudgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT III – FRAUD (The Original Australian)

39. Plaintiff adopts and incorporates paragraphs 1 to 28 as paragraph 38 of Count III.

40. The Original Australian and Barclay engaged in a scheme to defraud ATE.

41. On November 2, 2007 The Original Australian promised it would pay ATE $110,451.80. This statement was false. The Original Australian knew it was false when it stated that it would pay the $110,451.80 on November 2, 2007.

42. ATE detrimentally relied on The Original Australian's false statement. ATE released The Original Australian's cargo in exchange for the false promise that the payment would be made. The Original Australian knew that its false promise would cause ATE to release the cargo.

43. ATE's reliance on The Original Australian's false promise to pay $110,451.80 has caused ATE damages.

44. The Original Australian's actions in this case have been particularly reprehensible. Not only did The Original Australian engage in the original act of premeditated lying, it compounded its ill behavior by trying to cover up its lie through a series of additional lies. Therefore, punitive damages should be awarded to punish The Original Australian and to deter it and others from committing similar acts of wrongdoing in the future.

WHEREFORE, Plaintiff Air Tiger Express (USA), Inc., requests judgment in its favor and against Defendant The Original Australian, LLC for actual damages in excess of $50,000, punitive damages, attorneys fees, prejudgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV – FRAUD (Barclay)

45. Plaintiff adopts and incorporates paragraphs 1 to 28 as paragraph 44 of Count IV.

46. The Original Australian and Barclay engaged in a scheme to defraud ATE.

47. On November 2, 2007 The Original Australian promised it would pay ATE $110,451.80. This promise was made by Barclay, the Founder and CEO of The Original Australian. Upon information and belief, only Barclay has the authority to instruct an employee from The Original Australian to pay the amount due. Barclay's purported instruction to a The Original Australian employee was false. When he instructed the employee to pay and fax a copy of the check that would be sent to ATE, Barclay knew The Original Australian would not be paying the $110,451.80 on November 2, 2007 or any other date.

48. ATE detrimentally relied on Barclay's false statement. ATE released The Original Australian's cargo in exchange for Barclay's false instruction that the payment would be made. Barclay knew that its false promise would cause ATE to release the cargo.

49. ATE's reliance on Barclay's false promise that The Original Australian would pay $110,451.80 has caused ATE damages.

50. In total, Barclay has knowingly participated and assisted in the fraud perpetrated against ATE.

51. Barclay's actions in this case are antithetical to how ethical, responsible business people are supposed to behave. His goal has been to simply steal ATE's freight forwarding services through deceit. In so doing, Barclay has orchestrated a web

of lies from falsely promising payment to falsely tracking down a payment that was never made.

52. Therefore, punitive damages should be awarded to punish Barclay and to deter him and others from committing similar acts of wrongdoing in the future.

WHEREFORE, Plaintiff Air Tiger Express (USA), Inc., requests judgment in its favor and against Defendant The Original Australian, LLC for actual damages in excess of $50,000, punitive damages, attorneys fees, prejudgment interest, costs, and such other relief as the Court deems just and proper.

AIR TIGER EXPRESS (USA), INC.

By: _____

Their Attorneys

Steven K. Sims
David Seidman
ENTERPRISE LAW GROUP, LLP
70 W. Madison St., Suite 740
Chicago, Illinois 60602
312-578-0200
312-578-0202 (fax)
Firm ID 40994

Dated:  March 4, 2008

## RULE 222(b) CERTIFICATION

As required by Illinois Supreme Court Rule 222(b), this is to certify that the amount claimed in this case exceeds $50,000.

Paul Sherman, Vice President/Station Manager of
Air Tiger Express (USA), Inc.



**ATE GROUP (USA), INC.**
Air Commerce Customs Brokers.
1201 East Oakton Avenue; Suite 02
Elk Grove Village, Illinois 60007;   United States of America
Tel: 847-766-0090 Fax: 847-766-0939  joe@ord.airtiger.com

Paul Barclay
**Warmbat/The Original Australia**
7464 Neef Road
Dayton, OH 45414

September 25, 2007

Tel: 937-454-2000
Fax: 937-454-2002

Dear Paul,

Thank you for your thoughtful consideration of our service and rates.  As a powerful Asia/USA logistics provider, we are confident that we will be an asset for Warmbat's trans-Pacific transportation and customs brokerage needs.  Please keep us in mind for any/all services you may need to/from Asia.  Following is a summary of our logistics services in Asia.  As always, if you or your staff have any further questions or concerns, feel free to contact us at any time.

## *OCEAN IMPORT RATES:*

**Shanghai – LAX**

| LCL | 20' | 40' | 40'HC |
|---|---|---|---|
| $65.00 per cbm | $1575.00 | $2050.00 | $2150 |

**Notes:**
1 CBM = 363kgs (LCL Only)
Ocean Container rates are all inclusive
Transit Time: 12-14 Days (Port to Port)

## *AIR TIGER EXPRESS OCEAN FORWARDING FEES:*
Kindly note that these fees may apply depending on the nature of service required.  For most simple ocean export shipments, the Export Forwarding Fee is all that is charged outside of freight costs.

Formal Consumption Entry Fee:

| | | |
|---|---|---|
| Informal Entry: | | US$ 100.00 |
| Additional Invoices | (After First Three Free) | US$ 70.00 |
| Additional Line Items | (After First Three Free) | US$ 10.00 |
| Government Agencies | (FDA etc, if applicable) | US$ 3.00 |
| Outport Brokerage | (Outside Chicago Clearances) | US$ 20.00 |
| US Terminals | At cost (LCL Cargo Only) | US$ N/A |
| Duty: | Determined By U.S. Customs | |
| MPF: | Minimum: | US$ 25.00 |
| | Flat Rate Per Merchandise Value: | .21 % |
| | Maximum: | US$ 485.00 |
| Harbor Maintenance: | For Ocean Shipments Only | .125 % Merchandise Value |

**AIR TIGER EXPRESS (USA), INC.**

Exhibit 1

WARMBAT / AIR TIGER EXPRESS 2007

# AIR TIGER EXPRESS CHICAGO KEY OFFICE PERSONNEL:

| | | | |
|---|---|---|---|
| Ocean Import: | Ms. Missy Romano | Ext 248 | missy@ord.airtiger.com |
| Air Import: | Ms. Tracey Voight | Ext 232 | tracey@ord.airtiger.com |
| Customs Brokerage: | Ms. Gail Dudesek | Ext 226 | gail@ord.airtiger.com |
| Customs Brokerage: | Ms. Laura Bavaro | Ext 225 | laura@ord.airtiger.com |
| Customs Brokerage: | Ms. Kim Gerdes | Ext 237 | kim@ord.airtiger.com |
| Customs Brokerage: | Ms. Adriene Mahal | Ext 244 | brokerage@ord.airtiger.com |
| Customs/Logistics | Mr. Roger Bruhal | Ext 241 | roger@ord.airtiger.com |
| Ocean Export: | Ms. Patti Lynch | Ext 242 | patti@ord.airtiger.com |
| Air Export: | Ms. Joyce Huang | Ext 246 | joyce@ord.airtiger.com |
| General Manager | Ms. Barb Frisby | Ext 229 | barb@ord.airtiger.com |
| Asia Route Development | Mr. Joe Davis | Ext 231 | joe@ord.airtiger.com |
| Intl Sales Coordinator: | Ms. Subha Shanmukha | Ext 247 | subha@ord.airtiger.com |
| Accounting: | Ms. Shelly McCleam | Ext 235 | shelly@ord.airtiger.com |
| Accounting: | Mr. Christopher McCleam | Ext 243 | chris@ord.airtiger.com |
| VP / Station Manager: | Mr. Paul Sherman | Ext 238 | paul@ord.airtiger.com |
| Brokerage Department: | | | |

# AIR TIGER EXPRESS OFFICES & CONTACTS:

Paul, kindly note that A.T.E. keeps a running update on all of our overseas offices and agents at our website: www.airtiger.com Feel free to visit our website for vital company information at any time. Many thanks for your continued interest in A.T.E.

### CHINA:

**Shanghai**
A.T.E. LOGISTICS SHANGHAI CO., LTD
Room 1201, 1202, 1203 Resource Plaza, No 268
South Zhongshan Road
Shanghai 200010 China

Tel: 011-8621-6332-5588
Fax: 011-8621-6332-2799
Ctc: Ms. Caroline Yu   (AIR)
caroline@sha.airtiger.com
Ctc: Ms. Jasmine Zhu   (SEA)
jasmine@sha.airtiger.com

AIR TIGER EXPRESS (USA), INC.

2

WARMBAT / AIR TIGER EXPRESS 2007

# NOTES ON AFOREMENTIONED RATES:

## AIRFREIGHT:

- Above rates subject to change at any time.
- Volume Weight is calculated by the airlines as L x W x H divided by 6000. The greater of the Volume and Gross Weights determines the Chargeable Weight from the airlines, reflected on the A.T.E. Invoice.
- Both the Fuel Surcharge and Security Surcharge have a US$5.00 minimum fee. These fees fluctuate a great deal; therefore, ATE will pass along these airline fees at the time of shipment at cost only.
- If inland trucking is involved, dimensional weight parameters may also apply.
- Above Rates all assume that cargo is Non-Hazardous material only.

## OCEANFREIGHT:

- Above rates applicable until April 30, 2008.  Rates are inclusive of PSS, BAF, IFC, ACC, to date: please note that as these surcharges are adjusted throughout the shipping season, A.T.E. will pass these along to our customers at cost only.
- All carriers reserve the right to implement additional GRIs or Fuel Charges on the contracts throughout the life of the contract.
- Aforementioned rates are inclusive of the SPS (Shanghai Port Surcharge) if applicable.
- LCL rates may be subject to additional destination breakdown and terminal fees; ATE will pass along these extra charges to our clients at cost only: should you require back-up documentation, please let us know.
- Kindly note that rates do not include extra charges, including (but not limited to) any rail flip fees, Pier Pass in Los Angeles, chassis cross-town fees, split return fees, chassis rental fees, chassis repositioning fees, tri-axle fees, driver detention fees, driver load/unload "detention" fees, excess rail storage fees, extra per diem fees, exam fees, "drop & pull" fees, or fees associated with extra-ordinary logistics processes due to unforeseen circumstances outside of the normal purview of logistics operations or Acts of God.
- Space and Equipment availability are expected to be an on-going issue for all Asia-To-USA importers this year.  If space and equipment are not available at the time of booking, A.T.E. will book your cargo on the next most cost effective carrier that can provide space and equipment.  Costs will vary on carriers not quoted directly in your proposal.  It is our wish to keep your supply chain flowing as smoothly as possible: thank you for your understanding.
- Trucking Delivery rates are based on independent trucker rates:  these are inclusive of the FSC (Fuel Surcharge) at the time of the proposal only and may have to be adjusted throughout the live of the contract based on market conditions.  A.T.E. will keep you posted as best as possible.
- Above Rates are for Collect Shipments only.
- Above Rates all assume that cargo is Non-Hazardous material only.

## CUSTOMS BROKERAGE:

- Company policy dictates that the first three shipments for any new account must be on a C.O.D. Basis.
- All payments of Duty, Transportation, Delivery, and Handling are due within 10 days of the issuance of the A.T.E. Invoice.
- Disbursement Fee of 1.5% of the amount to be outlayed by A.T.E. for all invoices not paid within 10 days of the issuance of invoice.
- After increments of 30 days, an additional 1.0% of the amount outlayed by A.T.E. will be assessed.
- Any invoices in excess of US$10,000.00 must be paid upfront, before cargo is released.
- All brokerage services are done by A.T.E. staff only.

---

**EX-WORKS SHIPMENTS BY OCEAN OR AIR:**

At times Vendors send cargo on an ex-works basis to the United States.  The aforementioned pricing covers Port,  Airport, or CFS pricing to the United States.  If cargo is sent ex-works from Asia, A.T.E. will bill the origin fees as separate line items on the collect invoice. This practice occurs seldom, however, A.T.E.  will accommodate all Client Vendors under these special circumstances to keep the flow of our customer's cargo moving smoothly. Thank you.

---

AIR TIGER EXPRESS (USA), INC.

WARMBAT / AIR TIGER EXPRESS 2007

# SUMMARY OF A.T.E. LOGISTICS SERVICES:

**Track/Trace:** A.T.E. offers an internet based system whereby imports/exporters may trace their ocean and air shipments from point of origin, all the way to the destination. Not only can users track their PO#s through the logistics pipelines, but also monitor shipments by shipper, AWB, BL, or timeframe. With various report-writing capabilities, the ATE Track/Trace system is the crowning point of our full range of logistical services.

**Financials:** Gross Revenues $292.902 million; Net Revenues $45.400 million; Total Overhead Expenses $24.532 Million; Operating Expense $12.803 million; Net Income before Tax $8.065 Million; Total Assets = Total Liabilities at $51.871 Million.

**Full Service:** Offering Customs Brokerage, Ocean and Air import and export services, CY-Management, Single Buyers Consolidation, Duty Drawback, Information Technologies and global coverage of markets, A.T.E. is in a perfect position to streamline all of your Asian operations.

**History:** A.T.E. was formed in Taiwan under the leadership of Richard Chu in 1976. It has become a full logistics provider worldwide with its corporate headquarters in Jamaica, New York. Though A.T.E. began as an Asian air forwarder, it quickly grew to encompass a worldwide presence for both ocean and air transportation. Today, we can boast of being a full service logistics management operation capable of personalized service.

**Offices:** A.T.E. is located in over 115 cities worldwide, with over 1,500 employees. Our worldwide headquarters is located in Jamaica, New York and we boast of operating 54 wholly owned A.T.E. offices worldwide. For a complete listing of our offices worldwide, feel free to access our website www.airtiger.com at any time.

**References:** American Accessories, Attwood, Baer Supply, BKA, Bloomington Wholesale, Boraam Industries, Bullboxer, Combined Talents, Cloud Inc., Courage Industries, Denso USA, Direct Solutions, Fiskars, Generac Power Systems, Genlyte-Thomas Group, Harmony Resources, Home Depot, IQA, Jack's Manufacturing, Kellwood, Mast Industries, L.J. Smith, Leading Lady, Miles Kimball, Norman Lamps, Okutani Corporation, Parts Fit, Prosource, Source Intl, Surehold, Tecstar, Telex Communications, Texxon Plastics, Toy Biz....and many more!!!

**Volumes:** Last year, ATE moved over 110 million pounds of airfreight; 320,000 Cubic Meters of consolidated freight; and 62.000 Full Container Loads from Asia to the United States on our own bills of lading/contracts.

## MISSION STATEMENT

Provide the best available service to our constituencies through commitment, dedication, and quality. We will work diligently to achieve our mission, never forgetting that our clients and our people are the reasons for our existence. We will work to be an extension of our client's company, remembering that their success is dependent upon our ability to perform the services they entrust to A.T.E. Logistics. We will grow our revenues and profits getting a fair return for the services we provide to our clients. Our company integrity will always be at the forefront of our mission.

Thanks again for your continued support of our international logistics operations, Paul. If you or your staff have any further questions or concerns, feel free to contact us at any time.

Sincerely:
AIR TIGER EXPRESS (USA), INC.,


Joe Davis
Asia Route Development

## AIR TIGER EXPRESS (USA), INC.

1201 East Oakton Avenue; Elk Grove Village, Illinois 60007; USA

Tel: 847-766-0090          Fax: 847-766-0939          E-Mail: joe@ord.airtiger.com

4

**Joe Davis**

| | |
|---|---|
| **From:** | Joe Davis [joe@ord.airtiger.com] |
| **Sent:** | Tuesday, September 25, 2007 4:35 PM |
| **To:** | 'Paul Barclay - Warmbat' |
| **Cc:** | 'Paul An'; 'Nina' |
| **Subject:** | RE: Ocean |

Got it.

Just let them know someone from ATE will be contacting them.

You have our office info on the proposal.

The name of the supplier is Henan?

Joe
*****

**From:** Paul Barclay - Warmbat [mailto:pjb@warmbat.com]
**Sent:** Tuesday, September 25, 2007 2:30 PM
**To:** 'Joe Davis'
**Cc:** 'Paul An'; 'Nina'
**Subject:** RE: Ocean
**Importance:** High

Hi Joe,

Our Factory contact for our shanghai container is:

Paul An
 011 86 1390 386 0815 (cell)
86 371 639 80933 (office)

Email above

They need container info ASAP.

We need this to get on the 1st available vessel and as soon as it has cleared customs, available to unpack and send onto us.

Please confirm,

Paul Barclay
Founder / CEO
Warmbat Australia
7464 Webster Street
Dayton Ohio 45414
Ph: 1-937-454-2000
Fax: 1-937-454-2002
email: pjb@warmbat.com
Web: www.warmbat.com

**From:** Joe Davis [mailto:joe@ord.airtiger.com]
**Sent:** Tuesday, September 25, 2007 6:46 PM

*Exhibit 2*

2/20/2008

**To:** 'Paul Barclay - Warmbat'
**Subject:** RE: Ocean

Hi Paul,

Thanks for this.

Attached are the CFS rates for containers.

Joe
******

**From:** Paul Barclay - Warmbat [mailto:pjb@warmbat.com]
**Sent:** Tuesday, September 25, 2007 11:51 AM
**To:** 'Joe Davis'
**Subject:** RE: Ocean

Hi Joe,

Please proceed with this 1st shipment via sea container. I will send you information on our factory later today.

Paul Barclay
Founder / CEO
Warmbat Australia
7464 Webster Street
Dayton Ohio 45414
Ph: 1-937-454-2000
Fax: 1-937-454-2002
email: pjb@warmbat.com
Web: www.warmbat.com

**From:** Joe Davis [mailto:joe@ord.airtiger.com]
**Sent:** Tuesday, September 25, 2007 4:14 PM
**To:** 'Paul Barclay - Warmbat'
**Subject:** Ocean

Hi Paul,

Attached are the ocean rates ex Shanghai to LAX.

I gave you LCL and container rates.

Containers would be a lot cheaper.

As for the container breakdown charges I'm just waiting on our LAX office to get back to me.

I'm heading on sales calls now so if you need something just call on my cellular phone.

Best regards,

Joseph A. Davis
Asian Route Development
ATE Group, ORD
Tel: (847) 766-0090
Fax: (847) 766-0939
Cell: (847) 630-1908
E-mail: joe@ord.airtiger.com
Website: www.airtiger.com

2/20/2008

# TERMS AND CONDITIONS

Exhibit 3

Rule: 019979-001 BILL(S) OF LADING 1...

| | Rule: 019979-001 BILL(S) OF LADING 1... | | | | ◀ 19/46 ▶ |
|---|---|---|---|---|---|
| Tariff: | Tariff Number | Original Issue | Trade Name (DBA Name) | Effective Date | Expiration Date | Pub Type |
| | 019979-001 1-1 (1) | 1/29/2006 | Air Tiger Express (USA), Inc. | 1/29/2006 | | I |

Rule Number:          8

Sub Rule Number:

Rule Title:             BILL(S) OF LADING

Rule Text:

(1) CLAUSE PARAMOUNT:

All carriage under this Bill of Lading to or from the United States shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. sections 1300-1315 (hereafter, "COGSA"). Carriage to or from Canada shall have effect under the Water Carriage of Goods Act of Canada ("COGWA"). All carriage to and from other States shall be governed by the law of any state making the Hague Rules or Hague-Visby Rules compulsorily applicable to this Bill of Lading or if there be no such law, in accordance with the Hague Rules. The provisions of applicable law (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the vessel whether the goods are carried on deck or under deck and throughout the entire time the goods are in the custody of the carrier.

(2) DEFINITIONS:

2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.

2.2 "Carrier" means Air Tiger Express (USA), Inc. on whose behalf this Bill of Lading has been signed.

2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this bill of lading.

2.5 "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.

2.6 "Carrier's container or carrier's equipment" includes containers or equipment owned, leased or used by Carrier in the transportation of Merchant's goods.

(3) SUBCONTRACTING:

3.1 Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.

3.2 Every servant or agent or subcontractor of Carrier shall be entitled to the same rights, exemptions from liability, defenses and immunities to which Carrier is entitled. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants or agents or subcontractors, who shall be deemed to be parties to the contract evidenced in this Bill of Lading.

(4) ROUTE OF TRANSPORT:

4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.

4.2 The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

(5) HINDRANCES AFFECTING PERFORMANCE:

5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.

5.2 If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike and if by virtue of the above Carrier has no duty to complete the performance of the contract, Carrier, whether or not the transport is commenced may without notice to Merchant elect to:

(a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or

(b) deliver the goods at the place of delivery.

In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation

for extra costs resulting from the circumstances referred to above.

**(6)  BASIC LIABILITY:**

6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its charge and the time of delivery but shall not be liable for any consequential damages arising from such loss or damage.

6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed by the legal rules applicable as provided in Section (1) of this Bill of Lading.

6.3 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred during sea carriage and liability shall be governed as provided in Section 6.2 above.

6.4 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.

6.5 Carrier shall not be liable for any loss or damage arising from:

(a) an act or omission or Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the  goods in  charge,

(b) compliance with the instructions of any person authorized to give them,

(c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant,

(d) inherent vice of the goods,

(e) lack or insufficiency of or defective condition of packing in the case of goods, which by their nature are liable to wastage or   damage when  not packed or when not properly packed,

(f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads,

(g) fire, unless caused by actual fault  or privity of Carrier,

(h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due  diligence.

6.6 With respect to the transportation performed by Inland Carriers to the port of loading or from the port of discharge, the responsibility of  Carrier shall be to procure transportation by such carriers (one or more) and such transportation shall be subject to the Inland Carriers' contracts of carriage or tariffs, which are incorporated herein by reference, and any law compulsorily applicable.

6.7 When any claims are paid to Merchant by Carrier, Carrier shall automatically be subrogated to all rights of  Merchant against all others,  including Inland  Carriers, on account of the losses of damages for which such claims are paid.

**(7) COMPENSATION FOR LOSS AND DAMAGE:**

7. 1 Unless otherwise mandated by compulsorily applicable  law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of

US$500 per package or per customary freight unit, unless Merchant, with the consent of  Carrier,  has declared a higher value for the goods in the space provided on the front of this Bill

of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability.  Where a container is stuffed by Shipper or on its behalf, and the container is sealed when received for shipment, Carrier's liability will be limited to US$500 with respect to the contents of each  such container, except when the Shipper declares the value on the face hereof and pays additional charges on ;such declared value as stated in Carrier's tariff.  The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US$500 per container.  However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim.

7.2 In any case where Carrier's liability for compensation may exceed the amounts set forth in clause 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.  Carrier shall have the option of replacing lost goods or repairing damaged goods.

7.3 If the  value of the goods is less than US$500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.

**(8) DESCRIPTION OF GOODS:**

Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the marks, number, quantity and weight, furnished by Merchant are correct and Merchant shall indemnify Carrier against all losses arising from any inaccuracy.

**(9) CARRIER'S CONTAINERS:**

9.1 If goods are not received by Carrier already in containers,  Carrier may pack them in any type

container.

9.2 Merchant shall be liable to Carrier for damage to Carrier's containers or equipment if such damage occurs while such equipment is in control of Merchant or his agents.

9.3 Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers or equipment during handling by or when in possession or control of Merchant.

(10)  CONTAINER PACKED BY MERCHANT:

If Carrier receives the goods already packed into containers:

1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers;

2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss or damage caused by breach of this warranty;

3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and

4. Carrier has the right but not the obligation to open and inspect the containers at any time without notice to Merchant, and expenses resulting from such inspections shall be borne by Merchant; and

5. Merchant shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use

(11)  DANGEROUS GOODS:

11.1 Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.

11.2 Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container in a form and manner as required by law or to Carrier or to the appropriate authorities all necessary documents required by law or by Carrier submit for the transportation of such goods.

11.3 If the goods subsequently, in the judgment of Carrier, become & danger to Carrier, the ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action

(12)  DECK CARGO:

12.1 Carrier has the right to carry the goods in any container under deck or on deck.

12.2 Carrier is not required to note "on deck stowage" on the face of this Bill of Lading and goods so carried shall constitute under deck stowage for all purposes including the General Average.

12.3 Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

(13)  HEAVY LIFT:

13.1 Single packages with a weight exceeding 500 pounds gross not presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier. The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.

13.2 If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, persons or property, and Merchant shall be liable for any loss of or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.

13.3 Merchant agrees to comply with all laws or regulations that may be applicable during the carriage concerning overweight containers and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of Merchant's failure to comply with this provision

(14)  DELIVERY:

14.1 Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.

14.2 Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge or place of delivery.

14.3 If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's

applicable tariff, the goods may be considered to have been delivered to Merchant, and, at Carrier's option, may be disposed of or stored at Merchant's expense

**(15)  NOTICE OF CLAIM:**
15.1 Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery.  If such notice is not provided, removal shall be prima facie evidence of delivery by Carrier.  If such loss or damage is not apparent, Carrier must be given written notice within 3 days of the delivery.

**(16)  FREIGHT AND CHARGES:**
16.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant.  Carrier and Merchant agree that it may be difficult or impossible to assess damages if freight is incorrectly declared.  Therefore, in case of incorrect declaration of the goods, Merchant shall pay a sum equal to three times the difference between the correct freight and the freight charged as liquidated damages, notwithstanding any other sum having been stated herein as freight payable.  Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate.
16.2 Freight shall be deemed earned on receipt of goods by Carrier, whether the freight be intended to be prepaid or collected at destination.  Payment shall be in full and in cash, in the currency named in this Bill of Lading, or another currency at Carrier's option.  Interest at 12% shall run from the date when freight and charges are due.  If the services of a freight forwarder are used for this transportation, those services shall be deemed to be performed as agent of Merchant and payment of freight to the freight forwarder is not payment to Carrier.  Full freight shall be paid on damaged or unsound goods.  In any referral for collection or action against Merchant for monies due to Carrier, upon recovery by Carrier, Merchant shall pay the expenses of collection and litigation, including reasonable attorneys' fees.
16.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods.  Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government.
16.4 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances.  This provision shall apply regardless of whether the front of this bill of lading has been marked "prepaid" or "freight prepaid" so long as freight and charges remain unpaid.
16.5 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall jointly and severally indemnify Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon Carrier by reason of any breach of Merchant of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**(17)  LIEN:**
Carrier shall have a general lien on any and all property (and documents relating thereto) of Merchant, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by Carrier in connection with any shipments of Merchant and if such claim remains unsatisfied for 30 days after demand for its payment is made, Carrier may sell at public auction or private sale, upon 10 days written notice, registered mail to Merchant, the goods, wares and/or merchandise or so much as may be necessary to satisfy such lien and the costs of recovery, and apply the net proceeds of such sale to the payment of the amount due Carrier.  Any surplus from such sale shall be transmitted to Merchant, and Merchant shall be liable for any deficiency in the sale.

**(18)  TIME BAR:**
Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within 9 months after delivery of the goods or the date when the goods should have been delivered.  The time bar for overcharge claims shall be that set forth in Carrier's applicable tariff or 120 days, whichever is shorter and of legal effect under the laws of the country having jurisdiction over this contract.

**(19)  JURISDICTION:**
Whenever COGSA applies by virtue of Section 1 of this Bill of Lading, this contract is to be governed by United States law and the U.S. District Court for the Southern District of New York is to have exclusive jurisdiction to hear all disputes hereunder.  In all other cases, interpretation of this Bill of Lading shall be subject to the law and jurisdiction of the place where it is issued.

Case 1:08-cv-01945    Document 1-3    Filed 04/04/2008    Page 31 of 37
Rule: 019979-001 BILL(S) OF LADING 1...

Page 5 of 6

**(20)  GENERAL AVERAGE:**
20.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1974 with the exception of Sections 21 and 22.
The General Average statement shall be prepared by adjusters appointed by Carrier.
20.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General Average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges incurred in respect of the goods.  If a salving vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**(21)  BOTH-TO-BLAME COLLISION CLAUSE:**
If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligence or fault on the part of Carrier or its servants or subcontractors,
Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners, insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner.  This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault with respect to a collision or contact.

**(22)  CARRIERS' TARIFFS:**
22.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff (s) on file with the United States Federal Maritime Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.
22.2 Copies of Carriers' tariffs may be obtained from Carrier or its agents upon request or from the governmental body with whom the tariff has been filed.

**(23)  PERISHABLE CARGO:**
23.1 Goods of a perishable nature shall be carried in ordinary containers without special protection, services or other measures unless there is noted on the reverse side of this
Bill of Lading that the goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped container or are to receive special attention in any way.
23.2 Merchant undertakes not to tender for transportation any goods which require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the goods by Carrier.  In case of refrigerated containers packed by or on behalf of Merchant, Merchant warrants that the goods have been properly stowed in the container and that the thermostatic controls have been adequately set before receipt of the goods by Carrier.
23.3 Merchant's attention is drawn to the fact that refrigerated containers are not designed to freeze down cargo which has not been presented for stuffing at or below its designated carrying temperature.  Carrier shall not be responsible for the consequences of cargo tendered at a higher temperature than that required for the transportation.
23.4 If the above requirements are not complied with, Carrier shall not be liable for any loss of or damage to the goods whatsoever.

**(24)  SEVERABILITY:**
The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.

**(25)  VARIATION OF THE CONTRACT:**
No servant or agent of Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by a Director or Officer of the Carrier so to waive or vary.

Attachment:

Publication:

| | |
|---|---|
| Effective Date: | 1/29/2006 |
| Through Date: | |
| Expiration Date: | |
| Publication Date: | 1/29/2006 |
| Publication Type: | I |

FMC Case Number:

Dismiss

**Air Tiger Express (USA), Inc.**
1201 East Oakton street, Suite 2
ELK GROVE VILLAGE, IL 60007

TEL:(847)766-0090, FAX:(847)766-0939

---

**DEBIT NOTE**

ESSER:WARMBAT/THE ORIGINAL AUSTRALIA

7464 Webster Street
DAYTON, OHIO 45414 45414 45414 4541 454

DATE:10/23/07
REISSUE DATE: 02/20/08
ACCT#WARBAT
INV#:7105300
MAWB#:cosu6006505390
LOT#:SHA71481    PCS: 2779
HAWB#:aasu07100196 WT:1102573

| TEM. | DESCRIPTION OF CHARGES. | AMOUNT. | CODE |
|------|-------------------------|---------|------|
| AA. | Ocean Freight | $ 14525.00 | 3340 |
| BB. | Pier Pass | $ 700.00 | 5602 |
| CC. | Destination Handling | $ 50.00 | 3340 |
| DD. | Ams | $ 25.00 | 3340 |
| EE. | Other Charges For Customs , Duty Entry | $ | |
| FF. | Dray And Misc Charges For Cntr | $ | |
| GG. | Breakdown To Be Billed At A Later Date | $ | |
| HH. | | $ | |
| II. | | $ | |
| JJ. | | $ | |
| KK. | | $ | |
| LL. | | $ | |

| TOTAL AMOUNT: | $ 15300.00 |

Please Arrange Prompt Paymnt!

If you are the importer of record, payment to the broker will not relieve
you of liability for Customs charges (duties,taxes, or other debts owed
Customs) in the event the charges are not paid by the broker. Therefore
if you pay by check, Customs charges may be paid with a seperate check
payable to the "U.S. Customs Service" which shall be delivered to Customs
by the broker. Customs clearance services provided by Air Commerce Customs
Brokers.
Custom Brokerage Service by Air Commerce CHB Inc. LIC#11407 Wholly Owned
Subsidiary.

Exhibit 4

Air Tiger Express (USA), Inc.
1201 East Oakton Street, Suite 2
ELK GROVE VILLAGE, IL 60007

TEL:(847)766-0090, FAX:(847)766-0939

## DEBIT NOTE

ESSER:WARMBAT/THE ORIGINAL AUSTRALIA

    7464 Webster Street
DAYTON, OHIO 45414 45414 45414 4541 454

DATE:11/02/07
REISSUE DATE: 02/20/08
ACCT#WARBAT
INV#:7115026
MAWB#:cosu 6006505390
LOT#:SHA71481    PCS: 2779
HAWB#:    WT: 110503

| ITEM. | DESCRIPTION OF CHARGES. | AMOUNT. | CODE |
|---|---|---|---|
| AA. | Duty | $ 65921.80 | 2240 |
| BB. | Brokerage | $ 100.00 | 5190 |
| CC. | Bond Premium | $ 3560.00 | 5115 |
| DD. | Inland Freight | $ 34300.00 | 5220 |
| EE. | Outport Services | $ 35.00 | 5602 |
| FF. | Storage | $ 200.00 | 5160 |
| GG. | Pallets | $ 2100.00 | 5602 |
| HH. | DRAYAGE | $ 1575.00 | 5220 |
| II. | DEVAN/TRANLOAD | $ 2660.00 | 5220 |
| JJ. | | $ | |
| KK. | ADDITIONAL CHARGES MAY BE PENDING | $ | |
| LL. | | $ | |

TOTAL AMOUNT:    $ 110451.80

Please Arrange Prompt Paymnt!

If you are the importer of record, payment to the broker will not relieve
you of liability for Customs charges (duties,taxes, or other debts owed
Customs) in the event the charges are not paid by the broker. Therefore
if you pay by check, Customs charges may be paid with a seperate check
payable to the "U.S. Customs Service" which shall be delivered to Customs
by the broker. Customs clearance services provided by Air Commerce Customs
Brokers.
Custom Brokerage Service by Air Commerce CHB Inc. LIC#11407 Wholly Owned
Subsidiary.

Exhibit 5

**kim**

| | |
|---|---|
| **From:** | Paul Barclay - Warmbat [pjb@warmbat.com] |
| **Sent:** | Friday, November 02, 2007 3:27 PM |
| **To:** | kim@ord.airtiger.com |
| **Cc:** | 'Mary Banks - Warmbat' |
| **Subject:** | RE: SHA71481 Warmbat |

**Importance:**       High


FYI - Mary, please cut this check today and fax to Kim

Paul Barclay
Founder / CEO
Warmbat Australia
7464 Webster Street
Dayton Ohio 45414
Ph: 1-937-454-2000
Fax: 1-937-454-2002
email: pjb@warmbat.com
Web: www.warmbat.com

-----Original Message-----
From: kim [mailto:kim@ord.airtiger.com]
Sent: Friday, November 02, 2007 4:26 PM
To: pjb@warmbat.com
Subject: SHA71481 Warmbat

Hi Paul,
Please see attached invoice. Please see additional notation at the top of the invoice.
Thank you & Have a nice weekend.
Kim

1

Exhibit 6



# facsimile transmittal

To: **Kim**    Fax: **847-766-0939**

From: **MARY A. BANKS**    Date: **11/2/2007**

Re:    Pages: **3**

CC:

☐ Urgent    ☑ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Original Australian LLC.

7464 Webster Street, Dayton, Ohio USA 45414
Phone 1-937-454-2000    Fax 1-937-454-2002

Exhibit 7



**THE ORIGINAL AUSTRALIAN. LLC**
dba **WARMBAT AUSTRALIA**
7464 WEBSTER STREET
DAYTON, OH 45414
937-454-2000

NATIONAL CITY BANK
P.O. BOX 5756
CLEVELAND, OH 44101-0756
23-1/440

2448

11/2/2007

PAY
TO THE
ORDER OF     AIR TIGER EXPRESS

One Hundred Ten Thousand Four Hundred Fifty-One and 80/100************************************************     $  **110,451.80

DOLLARS

AIR TIGER EXPRESS
1201 EAST OAKTON STREET
SUITE 2
ELK GROVE VILLAGE IL 60007

MEMO

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT     AUTHORIZED SIGNATURE

⑈002448⑈ ⑆044000011⑆ 0764172961⑈

---

THE ORIGINAL AUSTRALIAN. LLC / dba WARMBAT AUSTRALIA

AIR TIGER EXPRESS

| Date | Type | Reference | | | | |
|------|------|-----------|---|---|---|---|
| 11/2/2007 | Bill | 7115026 | | | 11/2/2007 | 2448 |

*7115026*

Original Amt.
110,451.80

Balance Due     Discount
110,451.80

Payment
110,451.80

Check Amount
110,451.80

National City Bank

110,451.80

---

THE ORIGINAL AUSTRALIAN. LLC / dba WARMBAT AUSTRALIA

AIR TIGER EXPRESS

| Date | Type | Reference | | | | |
|------|------|-----------|---|---|---|---|
| 11/2/2007 | Bill | 7115026 | | | 11/2/2007 | 2448 |

Original Amt.
110,451.80

Balance Due     Discount
110,451.80

Payment
110,451.80

Check Amount
110,451.80

National City Bank

110,451.80