IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERBN DIVISION

AIR TIGER EXPRESS (USA), INC.,　　　　)
a corporation of Delaware　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　No. 08 C 1945
　　　　v.　　　　　　　　　　　　　)　　The Hon. Judge Darrah
　　　　　　　　　　　　　　　　　)　　The Hon. Mag. Judge Ashman
PAUL BARCLAY; and THE ORIGINAL　　　)
AUSTRALIAN, LLC, an Ohio limited　　　)
liability company;　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)

## PLAINTIFF AIR TIGER EXPRESS' RESPONSE TO DEFENDANTS THE ORIGINAL AUSTRALIAN'S AND BARCLAY'S MOTION TO DISMISS COUNTS II, III, AND IV PURSUANT TO RULE 12(B)(6)

Plaintiff Air Tiger Express (USA), Inc. ("ATE") in opposition to the Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants The

Original Australian, LLC ("Warmbat") and Paul Barclay ("Barclay") states as follows:

### INTRODUCTION

ATE complaint is straightforward: Warmbat and Barclay have intended not to

pay ATE more than $110,000 for its services even though Warmbat contracted to pay,

promised to pay, and then claimed that it paid ATE. The totality of these acts amounts to

both a scheme to defraud and an account stated for the purportedly paid, yet still unpaid,

amount under Illinois law.

## FACTS PLED IN ATE'S COMPLAINT

ATE and Warmbat entered into a freight forwarding contract governing the transportation of goods. (Complaint, ¶1) ATE provided the services pursuant to this contract. (Complaint, ¶19)

On October 23, 2007 ATE issued an invoice to Warmbat for the oceanborne leg of the carriage in the amount of $15,300. (Complaint, ¶19, Exhibit 4) This invoice was paid. (Complaint, ¶20) In relevant part, the invoice states that "Other Charges for Customs, Duty Entry Dray And Misc Charges For Cntr Breakdown To Be Billed At A Later Date." (Complaint, Exhibit 4)

Subsequently, ATE sent another invoice to Warmbat on November 2, 2007 for other freight forwarding services in the amount of $110,451.80. (Complaint, ¶21, Exhibit 5)[1] The breakdown of this amount is as follows:

| | |
|---|---|
| Duty: | $65,921.80 |
| Brokerage: | $100.00 |
| Bond Premium: | $3,560.00 |
| Inland Freight: | $34,300.00 |
| Outport Services: | $35.00 |
| Storage: | $200.00 |
| Pallets: | $2,100.00 |
| Drayage: | $1,575.00 |
| Devan/Transload: | $2,660.00 |

*Id.* At the top of the invoice, an ATE employee wrote "*NEED FAXED COPY OF CHECK TO RELEASE FRIEGHT* CHECK MUST BE RECEIVED BY THIS OFFICE W/IN 4 BUSINESS DAYS." (Exhibit A) In response, Barclay sent an e-mail to a Warmbat employee to "cut this check and fax to Kim." (Complaint, ¶23, Exhibit 6). A copy of a check for $110,451.80 was faxed to ATE on November 2, 2007. (Complaint,

---

[1]    The invoice is attached hereto as Exhibit A. Counsel for ATE inadvertently attached a clean copy of the invoice without the notation written by an ATE employee on top of the invoice that was sent to Warmbat. Counsel for ATE will correct this error.

¶23, Exhibit 7).  In reliance on this representation, ATE released Warmbat's goods for delivery.  (Complaint ¶22)

ATE has never received the actual check or any other form of payment for the $110,451.80.  (Complaint, ¶23)  Instead, ATE received assurances from Warmbat "that the original check was sent to ATE" in response to ATE queries as to whether the original check was actually sent.  (Complaint, ¶27)  And Barclay has the necessary power over Warmbat to determine whether the November 2, 2007 invoice would be paid, which he knew would not happen.  (Complaint, ¶47)

These allegations form the basis for ATE's claims against Barclay for fraud (Count IV) and Warmbat for account stated (Count II) and fraud (Count III).

## ARGUMENT

ATE's complaint adequately pleads claims for fraud against Barclay and Warmbat as well as an account stated claim against Warmbat.  The fraud claims are premised on two fraudulent allegations: (1) Barclay's actions showing that payment would be made by Warmbat to ATE; and (2) the false statements that Warmbat in fact sent the check to Warmbat as Barclay instructed.  Combined, these two allegations amount to a scheme to defraud; thereby meeting the exception to the Illinois courts' prohibition on promissory fraud claims.  And taken alone, Barclay's false indication that Warmbat would pay ATE could be considered the scheme to defraud under Illinois law.

The account stated claim is also readily apparent from the face of the complaint. ATE sent the November 2, 2007 invoice to Warmbat for $110,451.80.  Warmbat agreed to pay the invoice by following the invoice's instructions and then expressly assenting to that specific amount by stating that the check had been sent.  Moreover, many of the

liquidated amounts in the second (November 2, 2007) invoice were unliquidated per the terms of the first (October 23, 2007) invoice. This liquidation and Warmbat's agreement to pay meets the basic definition of an account stated.

1.    Standards of Review – FRCP 9(b) and 12(b)(6)

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true and any reasonable inferences that can be drawn from the complaint are construed in favor of a plaintiff. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The Court should dismiss a case under Rule 12(b)(6) only when it appears beyond doubt that a plaintiff can prove no set of facts to support the allegations in his or her claim. *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). Moreover, under FRCP 8(a), a plaintiff need only set forth a short and plain statement of the allegations underlying plaintiff's claim. *Id.* Thus, plaintiff need not plead facts and may plead conclusions if such conclusions put defendant on notice of plaintiff's claims. *McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000).

When cases involve allegations of fraud, Rule 9(b) also applies: "[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* But Rule 9(b)'s requirement of pleading fraud with particularity does not preempt the otherwise liberal pleading standard set by Rule 8(a). *Folsom v. Continental Illinois Nat'l Bank & Trust Co.*, 633 F.Supp 178, 185 (N.D. Ill. 1986) citing Wright & Miller, Civil Practice and Procedures: Civil § 1297.    "Rule 9 lists the actions in which slightly more is needed for notice. In a fraud action, a plaintiff need also state 'with particularity' the circumstances constituting the fraud." *Tomera v. Galt*, 511 F.2d

4

504, 508 (7th Cir. 1975). Thus, Rule 9(b) does not require that the complaint explain plaintiff's theory of the case, but that it alleges the date and content of the misrepresentation that plaintiff claims was fraudulent. *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 523-24 (7th Cir. 1993).

2.    ATE adequately alleges its claims of fraud against Warmbat (Count III) and Barclay (Count IV).

All of the requisite elements of common-law-fraud are pled by ATE in this case. The elements are: (1) an intentional false statement of material fact; (2) the party to whom the statement was made had the right to rely upon it; (3) the statement was made for the purpose of inducing reliance thereon; and (4) reliance by the person to whom the statement was made led to that person's injury. *Industrial Specialty Chemicals v. Cummings Engine Co.*, 902 F. Supp. 805, 813 (N.D. Ill. 1995). Here, all of these allegations are pled with specificity. In cases that include promises to engage in future activity, i.e. promissory fraud, plaintiffs must also allege a "scheme to defraud"; otherwise, Illinois law prohibits such actions. *Roda v. Berko*, 401 Ill. 335, 340 (1948).

a.    ATE pled a *prima facie* case of fraud against Warmbat and Barclay.

First, the complaint alleges that Warmbat made false statements of a material fact at Barclay's direction: (a) a false statement that Warmbat would pay the November 2, 2007 invoice for $110,451.80; and (b) Warmbat's false statements that it sent the check to ATE when it had not done so. (Complaint, ¶¶23, 24, 27) These misrepresentations are material because had anyone at Warmbat informed ATE that Warmbat never intended to make the payment, ATE would not have released the cargo for delivery and continued to make deliveries. *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 837-838 (N.D. Ill. 2007).

Warmbat contends that the faxed check alone is not a false statement because "the faxed copy of the check does not contain any false representation." (Motion at 9). This contention is absurd because the entire check <u>itself</u> is a misrepresentation because Warmbat <u>never</u> intended to pay ATE. (Complaint header between ¶¶18-19: **THE ORIGINAL AUSTRALIAN AGREES TO PAY ATE FOR $110,451.80 IN OUTSTANDING CHARGES WITHOUT ANY INTENTION TO PAY—*IT EVEN FAXES A FALSE CHECK TO ATE***) (emphasis in original)  It is irrelevant that someone at Warmbat took a couple of minutes to fill in one bit of true information (ATE's address) and Barclay apparently signed a check. (Complaint, Exhibit 7)  Rather, ATE alleges that Warmbat was neither ready nor willing to pay the November 2, 2007 invoice because it never intended to do so. (Complaint, ¶¶41, 47)

Moreover, the fraud goes well beyond the mere creation and faxing of the check. Warmbat compounded its fraudulent conduct by continuing to make false representations of past acts—that the check had been sent to ATE. (Complaint, ¶27)  This compounding of the fraud factors into whether Warmbat engaged in a "scheme to defraud" in that it shows that the scheme went beyond a single promise and included subsequent false statements. *See* Section 2(b).

Second, the complaint alleges that ATE had a right to rely on Warmbat's promise to pay and continued professions of payment. ATE and Warmbat used a similar system in which Warmbat faxed a copy of a check to ATE and then subsequently made the payment pursuant to an invoice. (Complaint, ¶¶20, 22)  Warmbat provided no indication that it never intended to send the agreed upon payment on November 2, 2007 when it faxed a copy of a check to ATE. (Complaint, ¶¶23, 25, Exhibits 6-7)

Third, the complaint alleges Warmbat's conduct showing its agreement that it would pay was made to induce ATE's reliance on those statements. (Complaint, ¶¶24, 42, 48) These allegations concern Barclay and Warmbat's state of mind for which the heightened pleading requirement of Rule 9(b) does not apply and "may be pleaded generally." *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990). However, the complaint "'must still afford a basis for believing that plaintiffs could prove scienter'", which ATE does by explaining that Barclay and Warmbat knew their false statements and promise were made for their interests only—the release of the cargo without payment. *Id.* (citation omitted)

Fourth, the complaint alleges ATE relied on the false statements and suffered an injury. ATE alleges its reliance in that it released Warmbat's goods upon the premise that it would receive payment for its freight forwarding work. (Complaint, ¶¶24, 42, 48) And this reliance resulted in at least $110,451.80 in damages, which is the amount of the unpaid invoice.

In total, ATE has pled the "who, what, when, where, and how" of Warmbat and Barclay's fraud, "even though the absence of such detailed chapter-and-verse information does not render the Complaint legally insufficient." *Martinez*, 527 F. Supp. 2d at 829 n.17.

b.  ATE pled Warmbat and Barclay engaged in a scheme to defraud.

An exception to the general rule against promissory fraud actions exists where the false promise or representation of future conduct is alleged to be part of a preexisting fraudulent scheme, with no intention of performing the promised acts. *Roda*, 401 Ill. at 340. Further, under the *Roda* exception promises are actionable if the false promise or

7

representation of future conduct is alleged to be the scheme employed to accomplish the fraud. *Id.* This exception is considered "a broad, acknowledged exception… when the false representation is the vehicle for perpetrating the fraud." *Webster v. South Suburban Hosp. Found.*, 1983 U.S. DIST. LEXIS 14361 1-2 (N.D. Ill. Aug. 24, 1983).[2]  In fact, "it would seem that the exception tends to engulf much of the general rule…" *Vance Pearson Inc. v. Alexander*, 86 Ill. App. 3d 1105, 1112 (4th Dist. 1980).

In this case, the scheme consists of Warmbat's false promise to pay ATE and continued false statements that it made the payment to ATE. (Complaint, ¶23, 27) Contrary to the argument in the motion to dismiss, this is more than a single fraudulent act. Instead, ATE's complaint alleges a concerted plan to misinform ATE that started with the misrepresentation that Warmbat would pay the invoice based on a prior transaction between the parties under which Warmbat faxed a copy of a check and then sent it to ATE in a timely fashion. (Complaint, ¶22) The scheme then continued into misrepresentations that the check was sent to ATE. (Complaint, ¶27)

In response to Warmbat's motion, it is immaterial whether ATE relied on the false statements that the check was sent. (Motion at 11, n.2) What matters is that a scheme to defraud exists and that ATE relied on statements within the scheme. The original lie spawned additional lies, which cannot be conveniently ignored or forgotten. Similarly, it is impossible for ATE to know every aspect of the scheme to defraud because there may have been, and probably were, internal acts at Warmbat directed by Barclay in furtherance of the scheme.

Nonetheless, even if Warmbat's single false promise to pay is deemed the scheme to defraud this single action falls under the *Roda* exception. Warmbat is incorrect when it

---

[2]     This case is attached hereto as Exhibit B.

alleges that a "pattern" or "perpetuat[ion of] the same alleged ruse over and over again" is necessary to maintain a claim for promissory fraud. (Motion at 9)  Illinois Appellate Court cases relying on *Roda* illustrate that ATE alleges a scheme to defraud even if the only allegation was Warmbat's false promise to pay.

One relevant case is *Vance Pearson Inc. v. Alexander* in which the defendant made a promise in a contract that plaintiff alleged he "knew of should have reasonably known that said representation was false and that he would be unable to complete the installation" by a certain date. *86 Ill. App. 3d at 1107.* This is exactly what ATE alleges—Warmbat made a false representation that it would act (pay)—within a certain time period per the terms of the November 2, 2007 invoice as faxed to it. (Exhibit A)

Likewise, the case of *In re Marriage of Fricke* ruled that a false promise made in a contract to use a particular service was considered a sufficient allegation of a scheme to defraud under *Roda*. 174 Ill. App. 3d 191, 195 (4th Dist. 1988). The Court held "[W]e conclude respondent's allegations concerning petitioner's lack of efforts to abide by his promise and his subsequent statements that he had no intention of complying and was referring business elsewhere were sufficient to create a *prima facie* case." *Id.* Such is the case here—ATE's complaint alleges that no effort has been made to abide by Warmbat's promise to pay and Warmbat never intended to abide by the promise. (*See* Complaint, ¶¶41, 48)

Other Illinois state court cases show that a scheme to defraud need not be as elaborate as the high standard set forth in the Motion to Dismiss and cases attached thereto. For example, the Illinois Appellate Court held that that a landlord's assurance to a tenant that everything would be taken care of prior to the tenant taking possession, in

addition to a later statement that everything was taken care of, constituted a scheme to defraud. *Carter v. Mueller*, 120 Ill. App. 3d 314, 319-20 (1st Dist. 1983). Likewise, the Illinois Appellate Court held that the making of two false promises met the *Roda* exception—far less than the "over and over again" standard set forth by Warmbat and Barclay. *Pepper v. Marks*, 168 Ill. App. 3d 258, 258 (1st Dist. 1988).

Finally, Warmbat and Barclay make a throw-away contention that needs to be refuted: it could not have engaged in the alleged fraud because "it simply makes no sense that a business would use a faxed check as a tool of fraud and hope to 'get away with it' (and there is no allegation that Warmbat is a 'fly-by-night operation that disappeared after taking delivery of the goods)..." (Motion at 11) We all know that the largest and smallest companies commit frauds of all levels of sophistication and amounts. Warmbat's size does not protect it from itself. As for whether Warmbat's manner of alleged fraud "makes sense", all that matters is that Warmbat committed the fraud, not whether it is a smart fraud or a dumb fraud.

3.    ATE adequately alleges its account stated claim against Warmbat (Count II).

The allegations in ATE's account stated claim meet the definition of an "account stated" as set forth under Illinois law:

> An "account stated" has been defined as "an agreement between parties who have had previous transactions that the account representing these transactions is true, so that the balance is correct, together with a promise which may be express or by implication for payment of this balance." (*Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 1040, 351 N.E.2d 264) The agreement must manifest the mutual assent of both the debtor and the creditor. (*Canadian Ace Brewing Co. v. Swiftsure Beer Service Co.* (1958), 17 Ill. App. 2d 54, 60, 149 N.E.2d 442.) The meeting of the parties' minds upon the correctness of an account is usually the result of one party rendering a statement of account to which the other party acquiesces. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 938, 369 N.E.2d 119.) The form of

acquiescence is immaterial, however, and the meeting of the minds may
be inferred from the conduct of the parties and the circumstances of the
case. *Motive Parts Co. of America*, at 939.

*Allied Wire Products, Inc. v. Marketing Techniques, Inc.*, 99 Ill. App. 29, 40 (1st

Dist. 1981).

All of the aforementioned requirements are pled. First, there was a contract

between the parties. (Complaint, ¶1) Second, ATE sent Warmbat invoices on October

23, 2007 and November 2, 2007 as rendering of the amounts due. (Complaint, ¶¶20-21)

Third, there were previous transactions between the parties to serve as pre-existing

liabilities. Most of the items listed on the November 2, 2007 invoice were unliquidated

per the first invoice sent to Warmbat on October 23, 2007. (Complaint, Exhibits 5 and 7;

Exhibit A) These items include: customs, duty entry, and dray, which were agreed to by

Barclay and then liquidated in the November 2, 2007 invoice. The November 2, 2007

invoice also included a line haul charge that was not part of the October 23, 2007 invoice.

(Complaint, Exhibits 4-5; Exhibit A)

Fourth and finally, at a minimum Warmbat made an implied promise to pay.

Warmbat sent a copy of a check for the exact amount in response to the November 2,

2007 invoice that stated "*NEED FAXED COPY OF CHECK TO RELEASE

FRIEGHT* CHECK MUST BE RECEIVED BY THIS OFFICE W/IN 4 BUSINESS

DAYS." (Exhibit A). Thereafter, Warmbat made an express representation that it agreed

with the invoiced amount by stating that the faxed check was sent out to ATE.

(Complaint, Exhibit 7) This serves as an allegation of a "meeting of the minds" for an

account stated. *Malkov Lumber Co. v. Wolf*, 3 Ill. App. 3d 52, 54 (1st Dist. 1974).

Warmbat contends that ATE fails to allege an account stated claim because it

merely sent an invoice. (Motion at 5) However, much more took place: Warmbat

11

implicitly agreed to pay this amount and then informed ATE that the payment was made. This is far different than the case Warmbat cites *U.S. Fire Protection Illinois, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 02 C 7462, 2004 U.S. Dist. LEXIS 23517 (N.D. Ill. November 22, 2004) and the case *U.S. Fire* relies upon, *Toth v. Mansell*, 207 Ill. App. 3d 665 (1st Dist. 1990). In *U.S. Fire*, the account stated claim was rejected because annual invoices that were sent for payment were "subject to change the following year, none 'rendered certain the amount of a debt for preexisting liability' as required for an account stated" *U.S. Fire* at 2004 U.S. Dist. LEXIS 23517 at *44 quoting *Toth*, 207 Ill. App. 3d at 672. In contrast, in this case ATE provided Warmbat a final rendering of the charges listed in the invoice that serves as the basis for the account stated claim.[3]

Toth poses another problem for Warmbat because *Toth* involved series of unanswered invoices. *Toth*, 207 Ill. App. 3d at 668-69  In *Toth* (and in *U.S. Fire*) there were no express statements that the invoiced amounts were acceptable, whereas Warmbat expressly stated that it paid the entire amount by check. *U.S. Fire* at 2004 U.S. Dist. LEXIS 23517 at *43-45; *Toth*, 207 Ill. App. 3d at 668-69, 672; (Complaint, ¶27)

Warmbat further contends that its "faxing of a check could never be reasonably construed as an unconditional agreement to pay the amount in the invoice." (Motion at 6.) This is seriously flawed for three reasons. First, this payment methodology was method of payment for the prior transaction between the parties—ATE sends invoice, Warmbat sends check within time allotted. Certainly, ATE has alleged enough to show that it was reasonable that Warmbat would act in the same manner as it had before. Second, this is how commercial parties act on a regular basis. Third, if ATE failed in its

---

[3]     The November 2, 2007 invoice (Exhibit A) states "ADDITIONAL CHARGES MAY BE PENDING", which means that additional charges may be assessed but the amounts already due and owing under the invoice are final statements of the work already performed.

performance as a freight forwarder, the proper course of action would be for Warmbat to sue ATE for damages. There is nothing in the complaint that shows Warmbat has an automatic right to a set-off if it unilaterally decided that ATE's performance caused it damages.

Finally, Warmbat alleges that an account stated claim must entail multiple transactions. This is not so. *Agroindustria Nacional, S.A. v. Henry Broch & Co.*, 976 F. Supp. 758 (N.D. Ill. 1997); *Barton v. Coulson*, 196 Ill. App. 212 (2nd Dist. 1915).

### CONCLUSION

For these reasons, Plaintiff Air Tiger Express (USA), Inc. respectfully requests the Court to deny Defendants' motion to dismiss Counts II, III, and IV pursuant to pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

AIR TIGER EXPRESS (USA), INC.

By: /s/  David Seidman

David Seidman
ENTERPRISE LAW GROUP, LLP
70 W. Madison St., Suite 740
Chicago, Illinois 60602
312-578-0200
312-578-0202 (fax)
Firm ID 40994

Dated:  June 4, 2008

13
