IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AIR TIGER EXPRESS (USA), INC., | : | CASE NO. 08 CV 1945 |
| | : | |
| Plaintiff/ Counterdefendant, | : | Judge John W. Darrah |
| | : | |
| v. | : | Magistrate Judge Martin C. Ashman |
| | : | |
| PAUL BARCLAY; and THE ORIGINAL AUSTRALIAN, LLC, | : | |
| | : | |
| Defendants/ Counterclaimants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS TO DISMISS COMPLAINT COUNTS II-IV**

Defendants, Paul Barclay ("Barclay") and The Original Australian, LLC d/b/a Warmbat Australia ("Warmbat"), filed a Motion to Dismiss directed to three of four claims asserted in the Complaint of Plaintiff, Air Tiger Express (USA), Inc. ("ATE"), including ATE's claims for account stated (Count II) and fraud (Counts III and IV). ATE opposes the Motion on the grounds that: (1) ATE alleged a viable account stated claim because Warmbat clearly promised to pay a pre-existing liability; (2) ATE alleged a viable fraud claim because Warmbat's faxing of a copy of a check constituted a misrepresentation of fact; and (3) ATE alleged a viable promissory fraud claim because Illinois law only requires the making of a false promise to be actionable. Because ATE is wrong on each count, the Court should dismiss Counts II, III and IV of the Complaint and allow this case to proceed in the only way that makes sense – as a breach of contract case.

**Background Facts**

The facts, as alleged in the Complaint and set out in the defendants' opening brief, have already been well-summarized. In sum, they reveal: While ATE was moving a shipment of

goods (the "Goods") for Warmbat from Shanghai, China, to Long Beach, California, ATE solicited Warmbat to continue shipping the Goods over land to Warmbat's facility in Dayton, Ohio. (Compl. ¶¶ 12, 15.) Ultimately, Warmbat and ATE agreed that ATE would move the Goods by truck in two to three days from Long Beach to Dayton. (*Id.* ¶ 16.)

On October 24, 2007, the Goods arrived at the Port of Long Beach. (*Id.* ¶ 12.) On October 29, 2007, the Goods cleared Customs. (*Id.* ¶ 14.) On November 2, 2007, ATE delivered the first containers of the Goods to Warmbat. On November 8, 2007, ATE completed delivery of the last container to Warmbat. (*Id.*)

On November 2, 2007 – before it had delivered any of the Goods – ATE faxed an invoice (the "Invoice") to Warmbat for all services "rendered," including those yet to be completed. (*Id.* ¶ 21 & Compl. Ex. 5.) ATE demanded that Warmbat fax a copy of a check to ATE in the amount of the Invoice before it would deliver the Goods. (Compl. ¶ 22.) Warmbat did so. (Compl. ¶ 23.) Warmbat did not deliver the actual check to ATE after delivery was finally completed on November 8. (*Id.*)

In the Response to the Motion to Dismiss, ATE highlights the allegations of Complaint paragraph 27, which relate to events following the completion of delivery of the Goods. (See Pl. Resp. at 3.) Complaint paragraph 27 reads: "ATE advised [Warmbat] to stop payment on the check that never arrived. [Warmbat] never responded that the original check was never sent. Instead, [Warmbat] insisted that the original check was sent to ATE."

**A.    To Comply With *Twombly*, the Complaint Must Plead All Claims in a Manner that is Plausible on Their Face, in Addition to Pleading Fraud with Particularity.**

The defendants' opening brief showed that, pursuant to Rule 9(b), ATE was required to plead fraud with particularity, specifying the time, place, and contents of any alleged false representation and the full nature of the transaction, as well as the circumstances of an alleged

2

"scheme to defraud." *U.S. v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823 (N.D. Ill. 2007); *Thompson v. Capital One Bank, Inc.*, 375 F. Supp. 2d 681 (N.D. Ill. 2005); *Bruss Co. v. Allnet Communication Services, Inc.*, 606 F. Supp. 401 (N.D. Ill. 1985); *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270 (N.D. Ill. 1976).

The defendants also showed that ATE was required to plead enough facts in the Complaint to convince the Court that its claims are plausible, citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In disregard of *Twombly,* ATE argues that the Court cannot dismiss ATE's claims unless it appears "beyond doubt that a plaintiff can prove no set of facts to support the allegations in his or her claim," citing to case law that pre-dates *Twombly*. (Pl. Resp. at 4.) *Twombly*, however, directly repudiated this formulation from *Conley v. Gibson*, holding, "this famous observation has earned its retirement." 127 S. Ct. at 1970. Despite *Twombly*'s articulation of the Rule 8 pleading standard, ATE fails to allege the facts that are necessary to state a plausible account stated claim or a plausible (and particularly stated) fraud claim. As will be further explained, for these reasons, the Court should dismiss Counts II, III and IV.

**B.** **ATE'S Claim for Account Stated Fails as a Matter of Law.**

In the Motion, Warmbat explained that ATE failed to properly allege a claim for account stated. Because the Invoice – the alleged statement of account – does not refer to any completed transaction, ATE's claim fails. *Dreyer Medical Clinic v. Corral*, 227 Ill. App. 3d 221, 226, 591 N.E.2d 111, 115 (1992).

ATE argues that its account stated claim is valid. ATE acknowledges, however, that a proper claim requires: "an agreement between parties *who have had **previous transactions***." (Pl. Resp. at 10, quoting *Allied Wire Prods., Inc. v. Mktg. Techniques, Inc.*, 99 Ill. App. 3d 29, 424

3

N.E.2d 1288 (1981); emphasis added.)  ATE argues, "there were previous transactions between the parties to serve as pre-existing liabilities." (Pl. Resp. at 11.)

ATE's argument turns the meanings of the words "previous" and "pre-existing" on their heads.  The entire purpose of the contract to which the Invoice refers was the delivery of the Goods to Warmbat in Dayton.  At the time ATE issued the Invoice, *none of the Goods had yet to be delivered*.  There is no sense of the word "previous" that tolerates the conclusion that the Invoice related back to "previous" transactions.

ATE's commitment to ship the Goods to Dayton was yet unfulfilled, so there was no "pre-existing" liability at the time ATE issued the Invoice (or at the time Warmbat faxed the check).  As a consequence, the entire purpose of an account stated claim has been subverted.  The claim was intended to apply to already-completed transactions in which ambiguity over the total amount due is remedied by mutual agreement to a stated amount.  In fact, the danger of treating the Invoice as a statement of account was fully realized – after ATE issued the Invoice, it dropped the ball on delivery, taking at least ten days to deliver what it had agreed to deliver in three days.  Accordingly, it was simply impossible for Warmbat to have unconditionally agreed on November 2 that it owed to ATE the amount on the Invoice for services rendered.  The Court should dismiss Count II.

C.     **ATE'S Claims for Fraud Fail as a Matter Of Law.**

The defendants' opening brief showed that, because ATE failed to allege that Warmbat made a misrepresentation of fact, and because ATE failed to allege that Warmbat engaged in a "scheme to defraud," ATE had failed to state claims for either fraud or promissory fraud, and the Court should dismiss Counts III and IV.  *P.M.C., Inc. v. Ekstein*, No. 91 C 3709, 1992 U.S. Dist.

LEXIS 7306, *11 (N.D. Ill., May 14, 1992);[1] *State v. Murphy-Knight*, 248 Ill. App. 3d 382, 387, 618 N.E.2d 459, 463 (1993). In the Response, ATE argues: (1) Warmbat did make a misrepresentation of fact, and (2) ATE is not required to plead and prove more than one false promise. ATE is wrong.

### 1. **ATE failed to properly allege claims for fraudulent misrepresentation.**

ATE's discussion of the standard for pleading a garden-variety claim of fraudulent misrepresentation utterly confuses the difference between a misstatement of *fact* and a false *promise*. Trying to argue that its claims satisfy the elements of fraudulent misrepresentation – so to avoid Illinois' stringent rule on promissory fraud – ATE claims that Warmbat's allegedly false and fraudulent statements include: "(a) a false statement that Warmbat would pay the November 2, 2007 invoice for $110,451.80; and (b) Warmbat's false statements that it sent the check to ATE when it had not done so." (Pl. Resp. at 5.) There are at least three problems with this argument.

First, one of Warmbat's alleged statements is not a statement of fact at all. In ATE's words, Warmbat stated that it "would pay" the Invoice. That representation does not make any factual claim because it is forward-looking. At most, it could be characterized as a promise to pay. ATE, however, over-interprets the actual statement made by Warmbat. Looking back at the Complaint – more specifically Exhibit 7 – on November 2, 2007, Warmbat faxed a copy of a check. The fax contains nothing more (except for a cover sheet). The fax includes no notes and no written promises – just the check. The faxed check is the only relevant communication that is pled with any particularity, but the faxed check contains no factual statements whatsoever, let alone factual misstatements.

---

[1] Copy attached to defendants' opening brief as Exhibit B.

Second, ATE highlights its allegation that, following delivery of the Goods, "[Warmbat] insisted that the original check was sent to ATE." (Compl. ¶ 27.) This allegation does not save ATE's claim for fraudulent misrepresentation. In the Complaint, ATE makes no attempt to allege this apparently critical component of its fraud claim with particularity. If it was made in writing (the Complaint is unclear), ATE does not attach a copy of the statement. ATE does not particularly allege when Warmbat made the statement. ATE does not allege the context in which the statement was allegedly made. ATE does not allege whether the communication was made in writing or over the telephone. Under the pleading standards of Rule 8, as addressed in *Twombly*, and Rule 9(b)'s for pleading fraud with particularity, ATE failed to properly allege that Warmbat represented that it had sent a check to ATE.

Third, even if Warmbat communicated to ATE that it had sent a check to ATE, ATE did not rely on this alleged statement to its detriment. ATE clearly alleges that – in reliance on the faxed copy of a check – ATE delivered the Goods (which it was obligated to do anyway) to Warmbat. (See Pl. Resp. at 7: "ATE alleges its reliance in that it released Warmbat's goods.") After it delivered the Goods, ATE did not alter its position with respect to Warmbat in any manner that caused alleged harm. In other words, after Warmbat allegedly told ATE that it had sent a check to ATE, ATE did not respond to that alleged communication, and its alleged damage was not compounded. Accordingly, ATE cannot demonstrate detrimental reliance. ATE failed to allege viable claims for fraudulent misrepresentation.

### 2. ATE fails to properly allege claims for promissory fraud.

Finally, ATE insists that it pled viable claims for promissory fraud. ATE argues that it properly alleged a scheme to defraud consisting of "Warmbat's false promise to pay ATE and continued false statements that it made the payment to ATE." (Pl. Resp. at 8.) ATE's argument

6

hinges on fine interpretation of Illinois law on promissory fraud. There are at least three problems with ATE's argument.

First, because Warmbat never made a false promise to ATE, ATE's arguments concerning the distinctions between liability and non-liability for promissory fraud are beside the point. As explained above, Warmbat's alleged promise to pay is not an actionable communication. ATE *interprets* Warmbat's fax as a promise to pay, but that interpretation is unreasonable. Warmbat faxed a copy of a check. Warmbat faxed that check before ATE even started to deliver the Goods to Warmbat. The fax contains no statements. The fax does not state: "We have put the check in the mail," or "We will put the check in the mail tomorrow," or even "We will put the check in the mail when delivery is complete." The fax simply makes no affirmative statement that may reasonably be construed as a promise. For this reason alone, ATE's fraud claims fail.

Second, ATE's claims fail because Warmbat's alleged statement "that it made the payment to ATE" is insufficient to support the claim of fraud. As explained above, the alleged communication is not pled with particularity and is not the subject of detrimental reliance. Inconceivably, ATE argues: "it is *immaterial* whether ATE relied on the false statements that the check was sent." (Pl. Resp. at 8; emphasis added.) ATE contradicts its own earlier argument: "The fraud claims are premised on two fraudulent [sic] allegations: . . . (2) the false statements that Warmbat in fact sent the check to Warmbat as Barclay instructed." (Pl. Resp. at 3.) ATE's confusion makes sense because ATE is trying to force a fraud theory onto facts that do not support it. In any event, Warmbat has shown that the fax transmitting a copy of a check contains no representation at all, let alone a fraudulent representation. If ATE's fraud claims are to survive, it must show that the claims may be grounded on the statement that "the check is in the

mail." Because ATE cannot, however, demonstrate its detrimental reliance on that statement (i.e., "it is immaterial"), ATE's claims fail.

Finally, while it is entirely unnecessary to examine the fine points of Illinois law of promissory fraud, ATE's interpretation is unreasonable, and its allegations do not state a valid claim for relief. As held in *Murphy-Knight*, "[t]he general rule denies recovery for fraud based upon a false representation of intention or future conduct" and "even a false promise of future conduct with no current intent to fulfil [sic] that promise will not constitute fraud." 248 Ill. App. 3d at 387, 618 N.E.2d at 463. Illinois law makes an exception to this general rule *only* if the false promise to perform a future action is made as part of a "fraudulent scheme." *Id.*

Citing cases decided between 1980 and 1988 (i.e., before *Murphy-Knight*), ATE argues that the Illinois Appellate Court has determined that the promissory fraud exception has completely swallowed the Illinois rule against liability for false promises. (Pl. Resp. at 8-10.) The Illinois Supreme Court, however, does not agree with ATE's interpretation.[2] The Illinois Supreme Court established the promissory fraud exception in *Roda v. Berko*, 401 Ill. 335, 81 N.E.2d 912 (1948). The court first held: "to constitute fraud in law the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention. . . . [A] promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a false representation as will constitute fraud." *Id.* at 340, 81 N.E.2d at 915. An exception exists only when the false promise "is the scheme or device to accomplish the fraud." *Id.* The Illinois Supreme Court has never abandoned the rule that promissory fraud requires more than a "mere

---

[2] Indeed, if the standard for promissory fraud is as low as ATE suggests, then Warmbat will seek leave to amend its Counterclaim to add a claim for promissory fraud, given the evidence that ATE promised delivery from California with "knowledge that performance on time would be difficult." *See Vance Pearson, Inc. v. Alexander*, 86 Ill. App. 3d 1105, 1110, 408 N.E.2d 782, 785 (1980).

8

promise" even accompanied by an "intention not to perform." See *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 168, 545 N.E.2d 672, 682 (1989) ("misrepresentations to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud"); *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334, 371 N.E.2d 634, 641 (1977) ("the general rule denies recovery for fraud based on a false representation of intention or future conduct").

Here, ATE failed to state any viable claim against Warmbat or Barclay within the ambit of the "scheme to defraud" exception to Illinois' prohibition against claims of promissory fraud. ATE argues that the faxed check constitutes an implied promise to pay the Invoice and that Warmbat did not intend to pay the Invoice. But as Judge Moran held in *American Hardware Mfrs. v. Reed Elsevier, Inc.*, "a scheme to defraud" sufficient to state a claim for promissory fraud under Illinois law requires "a string of broken promises, *particularly egregious* broken promises that occur in close proximity to the promises." No. 03 C 9421, 2005 U.S. Dist. LEXIS 30260, *14-*15 (N.D. Ill., Nov. 29, 2005) (emphasis added). Contrary to the plaintiff's argument here, a "single promise will not support a promissory fraud claim unless it is particularly egregious." *Id*. at *51.[3] Nor, as pled in the Complaint, is there anything "particularly egregious" about the alleged promise by Warmbat upon which the plaintiff hangs its claims of fraud. As pled in the Complaint, at the time Warmbat faxed a copy of the check, ATE had yet to deliver any of the Goods. Timely performance was already in jeopardy and, in fact, complete delivery would require another six days after Warmbat faxed the check.

---

[3] *See also Jada Toys, Inc. v. Chicago Import, Inc.*, No. 07 C 699 (N.D. Ill., Apr. 10, 2008). *American Hardware* and *Jada Toys* were submitted as Exhibits C and D, respectively, with the defendants' opening brief.

In any event, the faxed check was not part of a pattern of fraudulent acts. ATE only alleges one further component of the alleged scheme – Warmbat's alleged statement that it had already sent the check. For reasons already discussed, Warmbat's alleged statement cannot be treated as a further fraudulent act – the statement was not pled with particularity and did not produce detrimental reliance.

Finally, ATE's fraud claims should be dismissed simply because they do not make sense. ATE dismisses Warmbat's observation on the grounds that "dumb fraud" is actionable just like "smart fraud." ATE misses the point. In a post-*Twombly* world, a plaintiff is required to allege claims that are plausible – especially if there is an entirely innocent explanation for the facts. Here, ATE alleged that (1) it demanded that Warmbat fax a copy of a check to it before it would deliver the Goods; (2) Warmbat faxed a copy of a check; (3) ATE delivered the goods between November 2 and November 8, 2007; and (4) Warmbat did not send the check. The most *plausible* explanation for these facts is that ATE failed to deliver the Goods in a timely fashion, and as a consequence Warmbat refused to pay the full Invoice. ***That does not constitute fraud***. The allegation that Warmbat said it sent a check does not enhance the plausibility of a fraudulent scheme (especially given the lack of particularity of the allegation). It is more plausible that the unidentified speaker made a mistake. Because the only plausible reading of the Complaint supports a breach of contract claim, and not a fraud claim, the Court should dismiss ATE's fraud claims.

## Conclusion

ATE is trying to create a bigger claim than the facts of this case support. The facts alleged in the Complaint (and the Counterclaim) support the notion that this dispute is over allegations of breach of contract. Efforts to graft on claims for account stated or for fraud are

nothing more than efforts to make this case into something it is not.  The Court should dismiss Claims II, III, and IV.

                   Respectfully submitted,

                   Paul Barclay and The Original Australian, LLC

                    /s/ Marion B. Adler
                   Marion B. Adler
                   RACHLIS DURHAM DUFF & ADLER, LLC
                   542 South Dearborn, Suite 900
                   Chicago, IL 60605
                   (312) 733-3957

                   Chad D. Cooper
                   Christine M. McLaughlin
                   THOMPSON HINE LLP
                   2000 Courthouse Plaza, N.E.
                   P.O. Box 8801
                   Dayton, Ohio  45401-8801
                   (937) 443-6909

Dated:  June 18, 2008