IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AIR TIGER EXPRESS (USA), INC., | Case No. 08 CV 1945 |
| Plaintiff, | Judge John W. Darrah |
| v. | |
| PAUL BARCLAY; and THE ORIGINAL AUSTRALIAN, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This is a removed diversity case arising out of Plaintiff Air Tiger Express (USA), Inc.'s ("ATE") provision of freight forwarding and custom brokerage services for Defendant the Original Australian, LLC, doing business as "Warmbat." Defendant Paul Barclay is the founder and CEO of Warmbat. Defendants move to dismiss Counts II through IV of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 17.) For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Warmbat is an Ohio limited-liability company that sells footwear to retailers across the United States. (Complaint ¶ 2.) On multiple occasions, Warmbat contracted with ATE for freight forwarding and other services.

On September 24, 2007, Warmbat emailed ATE, requesting freight forwarding quotations for three shipments, including an ocean-borne shipment from Shanghai, China

to the United States. ATE emailed a proposal to Barclay for the services. The proposal contained various pieces of information, including ATE's rates and policies for carriage of goods by sea, ocean-forwarding fees, customs brokerage fees, and explanations of services.

Barclay agreed to the terms of the proposal, emailing to ATE that it "proceed with this 1st shipment via sea container." (Complt., ¶ 11, Ex. 2.)

ATE shipped Warmbat's goods from China to the Port of Long Beach, California. The goods arrived in Long Beach on October 24, 2007, but did not clear customs until October 29. Before, during and after the ocean-borne leg of this shipment, ATE and Warmbat discussed ATE lining up trucks to carry the goods from the Port of Long Beach to Warmbat's office in Dayton, Ohio. According to the Complaint, Warmbat agreed to ATE's "additional service offer"; and ATE obtained the requisite trucking services. (Complt., ¶ 15.) The parties agreed that the trucking portion of the shipment should take two to three business days. Five of the seven containers carrying the goods were transported during the two-to-three day period and arrived in Dayton on either November 2 or November 5, 2007. The other two containers arrived shortly thereafter. One was delivered on November 6 because Warmbat could not accept its delivery on November 5. Warmbat knew the seventh container was not loaded in California until November 5, but did not raise any objection to its shipment before it arrived in Dayton on November 8.

On October 23, 2007, ATE issued an invoice to Warmbat for the ocean-borne leg of the carriage in the amount of $15,300.00. The invoice stated: "Other Charges For

2

Customs, Duty Entry Dray And Misc. Charges For Cntr Breakdown To Be Billed At A Later Date." (Complt., Ex. 4.) Warmbat paid this invoice in full.

Subsequently, ATE sent another invoice to Warmbat on November 2, 2007, for additional freight-forwarding services in the amount of $110,451.80. ATE informed Warmbat that it would not release the freight unless this invoice was paid but agreed that it would release the freight in exchange for a copy of a check to be mailed to it shortly thereafter.

On November 2, 2007, a Warmbat employee sent ATE a faxed copy of a check for $110,451.80; and ATE released the freight. However, Warmbat did not send the check to ATE. Further, when ATE inquired about the check, Warmbat informed ATE that the check had been sent. ATE has not received the check or any other form of payment on the $110,451.80 invoice.

Based on these facts, ATE filed this action against Warmbat and Barclay, alleging four claims for relief: breach of contract against Warmbat, arising out of an alleged agreement to ship goods (Count I); a claim for an "account stated," arising out of the $110,451.80 invoice (Count II); and claims for fraud against Warmbat (Count III) and ATE (Count IV), arising out of an alleged fraudulent promise to pay ATE for the additional freight- forwarding services.

## LEGAL STANDARD

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) if the factual allegations of the complaint, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Bell Atlantic Corp v. Twombly*, __ U.S.__,

127 S. Ct. 1955, 1968-69 (2007). In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004). "A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, __ F.3d __ (7th Cir. 2008), 2008 WL 2168638 (7th Cir. 2008) (internal quotations omitted). However, "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1068-69). If the complaint fails to provide such allegations, "the plaintiff pleads itself out of court." (*Id.*)

## ANALYSIS

Defendants do not dispute that ATE has adequately stated a breach of contract claim. However, defendants contend, that is ATE's only claim as ATE's alleged account stated and fraud claims fail as a matter of law.

An "account stated" is a form of proving damages for a breach of a promise to pay on a contract. An account stated:

> determines the amount of a preexisting debt when parties who previously have conducted monetary transactions agree that there truly is an account representing the transactions between them and one party renders a statement of account to another who retains that statement beyond a reasonable amount of time without objection.

4

*ITQ Lata, LLC v. MB Financial Bank, N.A.*, 317 F. Supp.2d 844, 858 (N.D. Ill. 2004). The retention of the statement of account for an unreasonable amount of time without objection constitutes an acknowledgment by the receiving party that the balance is due and owing. Merely sending an invoice does not create an account stated unless the debtor or creditor intends to establish a balance due or a final settlement to date. *Toth v. Mansell*, 207 Ill. App.3d 665, 672, 566 N.E.2d 730, 735 (Ill. App. 1990). Moreover, an account stated "cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed." *Fabricadetejidos Imperial S.A. v. Brandon Apparel Group, Inc.*, 218 F. Supp.2d 974, 979 (N.D. Ill. 2002).

In its claim for an account stated, ATE alleges that on November 2, 2007, it sent the $110,451.80 invoice to Warmbat for unpaid charges; and Warmbat "acquiesced and agreed" to pay the invoice the same day by virtue of faxing a copy of a check to ATE. (Complaint ¶ 36.)

ATE's allegations, even viewed in the light most favorable to it, cannot plausibly be viewed as an account stated. An account stated "must be based upon previous transactions between the parties and renders certain the amount of a debt for a preexisting liability." *Toth*, 207 Ill. App.3d at 672, 566 N.E.2d at 735. Here, there is only one transaction, and there is no preexisting liability between the parties. Indeed, the issue of liability – whether ATE properly delivered the goods to Warmbat under the parties' agreement such that Warmbat must pay for them – must be resolved. Further, ATE's invoice is not needed to render certain the amount Warmbat allegedly owes ATE.

5

ATE's allegations are not properly resolved in an action for an account stated but, rather, state a claim for breach of contract. Count II fails to state a claim on the alleged facts and is dismissed.

As to Counts III and IV, it is well settled that a false promise to perform a future act does not constitute fraud under Illinois law. *State v. Murphy-Knight*, 248 Ill. App.3d 382, 618 N.E.2d 459 (Ill. App. 1993). An exception exists in cases of "promissory fraud," where a party communicates an intent to perform future conduct when he does not intend to carry out the promise. *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000). To be actionable, the promissory fraud must be part of a "pattern" of fraudulent acts, known as a "scheme to defraud." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). In terms of understanding the distinction between a false promise and a "scheme," the Seventh Circuit has stated that there is actionable fraud "if it is either particularly egregious or . . . is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. American Broadcasting Companies*, 44 F.3d 1345, 1354 (7th Cir. 1995). *See also Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) ("In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent – a scheme or device.")

ATE's fraud claims allege that Warmbat and Barclay falsely represented to ATE that Warmbat would pay the $110,451.80 invoice by sending the faxed check. This induced ATE to deliver the goods to Warmbat. (Counts III and IV.) ATE further alleges that Defendants compounded their misrepresentation after the fact by falsely telling ATE,

6

when it reported that the check had not arrived, that the check had been sent. (Complt., ¶ ¶ 27, 44.)

These allegations are sufficient to withstand a motion to dismiss. Although Defendants allegedly made only one false promise of payment, they reinforced the deception by insisting, after the fact, that the check had been sent. ATE's reliance on the promise, moreover, was substantial as it delivered the goods on the faith of the alleged false promise. These allegations could reasonably support a finding of the level of egregious conduct required to demonstrate promissory fraud. Accordingly, Defendants' Motion to Dismiss is denied as to Counts III and IV.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted as to Count II and denied as to Counts III and IV.

Date: June 26, 2008

John W. Darrah
United States District Court Judge